No. 89-159

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

KEITH INGRAHAM,

        Claimant and Petitioner,

-vs-

CHAMPION INTERNATIONAL, a Self-insured
Plan I Employer,

        Defendant and Respondent.

ORIGINAL PROCEEDING:

COUNSEL OF RECORD:

    For Petitioner:

        Thomas C. Bulman argued; Bulman Law Associates, Missoula,
        Montana

    For Respondent:

        Bradley J. Luck argued; Garlington, Lohn & Robinson,
        Missoula, Montana
        James Scheier argued, Agency Legal Services, Helena,
        Montana

    For Amicus Curiae:

        John Bothe; Bothe & Lauridsen, Columbia Falls, Montana

Submitted: March 1, 1990

Decided: March 23, 1990

Filed:

_____
Clerk

Justice John Conway Harrison delivered the Opinion of the Court.

Petitioner Keith Ingraham has filed his petition for declaratory judgment on original proceedings in this Court requesting that parts of §§ 39-71-741(1), 39-71-741(2), and 39-71-741(3), MCA, be declared unconstitutional.

On April 3, 1989, this Court ordered respondents Champion International, the Division of Workers' Compensation, and the Attorney General for the State of Montana to file written responses to the petition. Champion International has filed herein its brief and response, and the Attorney General has responded in brief in his own behalf and on behalf of the Division of Workers' Compensation. We have in addition received an amicus brief from John H. Bothe, an attorney in Columbia Falls, Montana, appearing as a friend of the court in support of the petition for declaratory judgment.

Under the facts of this case, not disputed, Keith Ingraham is an employee of Champion International. Champion is enrolled under Plan I of the Montana Workers' Compensation Act and is self-insured. Subsequent to December 18, 1987, Ingraham had reported that he had suffered an industrial injury on such date in the course and scope of his employment when a board struck him in the chest. Champion accepted liability for the injury and benefits

2

were initiated. At the time briefs were filed herein, Ingraham continued to receive temporary total disability benefits on a bi-weekly basis. Champion claims that issues exist in the claim concerning the relationship of some of Ingraham's physical problems and the alleged disability from the industrial injury. Ingraham claims that though he is now receiving total temporary disability benefits, that he will probably have a permanent partial disability as defined in § 39-71-116(14), MCA. The Attorney General concedes the standing of Ingraham to challenge the constitutionality of the statutes. Champion does not challenge his standing.

Once standing is established, we determine whether there are necessary factors sufficient for this Court to accept original jurisdiction. Speaking in the context of an original action for declaratory judgment, this Court has stated:

> Once standing to bring the action is established, the question shifts to whether the action meets the necessary factors for this Court to accept original jurisdiction. This Court has found that an assumption of original jurisdiction is proper when: (1) constitutional issues of major state wide importance are involved; (2) the case involves pure legal questions of statutory and constitutional construction; and (3) urgency and emergency factors exist making the normal appeal process inadequate. (Citations omitted.) Moreover, this Court clearly stated the Court has original jurisdiction to accept declaratory judgment proceedings "where the issues have impact of major importance on a statewide basis, or upon a major segment of the state, and where the purpose of the

3

> declaratory judgment proceedings will serve
> the office of a writ provided by law. . ."
> Grossman v. State, Depart. of Natural
> Resources (1984), 209 Mont. 427, 436, 682 P.2d
> 1319, 1324.

Butte-Silver Bow Local Govern. v. State (Mont. 1989), 768 P.2d 327,
329, 46 St.Rep. 87, 89.

The issues raised by the petitioner Ingraham, and addressed
by the respondent and the Attorney General in their replies, as
well as by amicus, show without a doubt that the requirements for
the acceptance of original jurisdiction are fully present in this
case. We therefore accept original jurisdiction.

## I.

In 1987, the legislature embarked on a comprehensive revision
of the laws relating to Workers' Compensation culminating in the
adoption of Chapter 464, Laws of Montana (1987), approved by the
Governor on April 4, 1987. Included in the legislation were
amendments to then-existing § 39-71-741, MCA. As amended, the
subsections of § 39-71-741, MCA, under attack in this case are as
follows:

> **Compromise settlements, lump-sum payments, and
> lump-sum advance payments.** (1) (a) Benefits
> may be converted in whole to a lump sum:
>
> (i) if a claimant and an insurer dispute
> the initial compensability of an injury; and
>
> (ii) if the claimant and insurer agree to
> a settlement.

4

(b) The agreement is subject to division approval. The division may disapprove an agreement under this section only if there is not a reasonable dispute over compensability.

(c) Upon approval, the agreement constitutes a compromise and release settlement and may not be reopened by the division or by any court.

(d) The parties' failure to reach an agreement is not a dispute over which a mediator or the workers' compensation court has jurisdiction.

(2) (a) If an insurer has accepted initial liability for an injury, permanent total and permanent partial wage supplement benefits may be converted in whole to a lump-sum payment.

(b) The conversion may be made only upon agreement between a claimant and an insurer.

(c) The agreement is subject to division approval. The division may approve an agreement if:

(i) there is a reasonable dispute concerning the amount of the insurer's future liability or benefits; or

(ii) the amount of the insurer's projected liability is reasonably certain and the settlement amount is not substantially less than the present value of the insurer's liability.

(d) The parties' failure to reach agreement is not a dispute over which a mediator or the workers' compensation court has jurisdiction.

(e) Upon approval, the agreement constitutes a compromise and release

settlement and may not be reopened by the division or by any court.

(3) (a) Permanent partial wage supplement benefits may be converted in part to a lump-sum advance.

(b) The conversion may be made only upon agreement between a claimant and an insurer.

(c) The agreement is subject to division approval. The division may approve an agreement if the parties demonstrate that the claimant has financial need that:

(i) relates to the necessities of life or relates to an accumulation of debt incurred prior to injury; and

(ii) arises subsequent to the date of injury or arises because of reduced income as a result of the injury.

(d) The parties' failure to reach an agreement is not a dispute over which a mediator or the workers' compensation court has jurisdiction.

. . .

Ingraham has mounted a number of issues respecting the constitutionality of the foregoing subsections. Without reaching the merits of the other issues, we choose two as dispositive in this case. They are:

1. Do the subsections contain unconstitutional delegations of legislative authority?

2. Do the subsections violate the administration of justice clause of the Montana Constitution, Art. II, § 16 (1972)?

6

II.

We must be cognizant, as Champion contends in brief, that in analyzing constitutional challenges, this Court has certain boundaries surrounding the power of the Court to determine constitutionality. Among those is the principal of avoiding constitutional questions whenever possible, State ex rel. Hammond v. Hager (1972), 160 Mont. 391, 400, 503 P.2d 52, 57; and an act of the legislature will not be declared invalid because it is repugnant to some provision of the constitution, unless its invalidity is made to appear beyond a reasonable doubt, Shea v. North-Butte Mining Company (1919), 55 Mont. 522, 530, 179 P. 499, 501. The constitutionality of a legislative enactment is prima facie presumed, and every intendment in its favor will be made unless its unconstitutionality appears beyond a reasonable doubt. T & W Chevrolet v. Darvial (1982), 196 Mont. 287, 292, 641 P.2d 1368, 1370.

Permanent partial disability benefits for injured workers are provided in § 39-71-703, MCA. The benefits available are impairment awards and wage supplements. A worker entitled to an impairment award may be paid bi-weekly or in a lump sum, at the discretion of the worker. Lump sums paid for impairments are not subject to the requirements of § 39-71-741, MCA. A worker entitled to permanent partial disability benefits in the form of wage

7

supplements is limited under the statute. Wage supplement benefits terminate at the expiration of 500 weeks minus impairment award weeks. Weekly compensation benefits may not exceed $149.50, at least until June 30, 1991. It is only a wage supplement award under the permanent partial disability statute which is subject to the provisions of § 39-71-741, MCA.

Ingraham claims that he is a likely candidate for permanent partial wage supplement benefits. His request for a lump-sum payment is therefore subject to subdivision (2) or (3) of § 39-71-741, MCA, as set out above.

Before the 1987 amendment to § 39-71-741, MCA, an injured worker entitled to any bi-weekly payments under the Workers' Compensation laws could apply to the division (the predecessor of the department) for a lump-sum payment, with the concurrence of the insurer. But if the insurer did not agree, and a controversy arose between the claimant and the insurer regarding the conversion of bi-weekly payments into a lump sum, the controversy was considered a dispute within the jurisdiction of the Workers' Compensation judge. Section 39-71-741, MCA (1985). Under that statute as now amended, no application for a lump-sum conversion may be made to the department unless the conversion is agreed upon by the claimant and the insurer. If they fail to agree, there is no dispute over which a mediator or the Workers' Compensation Court has

8

jurisdiction. Thus, under the amended statute, in practical effect, a worker in need of a lump-sum conversion, unless he has the insurer's approval, cannot apply to the department, much less to a court, to determine his need. The effect of the statute places a tilt in favor of the insurer or the worker, either of whom can withhold consent for any reason, or for no reason, to a request for a lump-sum conversion.

The power of the legislature to fix the amounts, time and manner of payment of workers' compensation benefits is not doubted. The legislature could, we think, deny completely any authority to an insurer, a worker, or the department to apply for or to allow lump-sum conversion of workers' benefits. Here the legislature has chosen, however, to permit lump-sum conversions in some cases, but on conditions different from that applying to permanent partial impairment benefits. Had the legislature conferred the authority solely upon the administrative agency, the legislature would have been required to lay down the policy or reasons behind the statute and to prescribe standards and guides for the grant of the power to the agency. Douglas v. Judge (1977), 174 Mont. 32, 568 P.2d 530; Baucus v. Lake County (1960), 138 Mont. 69, 354 P.2d 1056. But in this sense the legislature has gone beyond that and has delegated an absolute discretion to the insurer (with whom a worker agrees) as to whether a lump-sum conversion of permanent partial

9

wages settlement benefits will be converted. The legislature has improperly and unconstitutionally delegated its authority to private parties as to what terms, and under what circumstances, and in what amounts, a lump-sum conversion can occur. The power of the legislature to prescribe the amounts, time and manner of payment of workers' compensation benefits, which as we said at the outset of this paragraph is not doubted, has been delegated in subdivision (2), § 39-71-741, MCA, to others. This the legislature may not do.

### III.

A further reason that subdivision (2), § 39-71-741, MCA, is constitutionally invalid is that the subsection purports to strip the courts of their judicial power over controversies regarding proposed lump-sum conversions.

We are reminded by the respondents, and properly so, that the Workers' Compensation Court is a creature of statute, without constitutional status, with its jurisdiction fixed by the legislature. State ex rel. Pac. Emp. Ins. v. Wkrs' Comp. (1988), 230 Mont. 233, 234, 749 P.2d 522, 523. We are also reminded that a worker's right to compensation benefits is not fundamental, Cottrill v. Cottrill Sodding Service (1987), 299 Mont. 40, 42-43, 744 P.2d 895, 897, and that this Court has held that a person's right of access to the courts is likewise not considered fundamental for the purposes of constitutional review. Peterson

10

v. Gr. Falls Sch. Dist. No. 1 & A (Mont. 1989), 773 P.2d 316, 46 St.Rep. 880. The 1987 amendment goes far beyond fixing the limits of jurisdiction in the Workers' Compensation Court. By taking away the jurisdiction of the Workers' Compensation Court unless the insurer agreed to the lump-sum settlement, the legislature did not only deprive the Workers' Compensation Court of jurisdiction, but it deprived this Court of its appellate power under §§ 39-71-2904 and -2905, MCA, the only appeal allowed a Worker's Compensation worker or insurer under our laws. See, Billings Deaconess Hosp., Inc. v. Angel (1986), 219 Mont. 490, 712 P.2d 1323. Our district courts have not been concerned with workers' compensation benefits since the establishment of the Workers' Compensation Court in 1975. Thus the effect of subdivision (2) of § 39-71-741 is to deprive the worker or the insurer of any right of access to the judicial department of this state, if the insurer and the worker do not agree.

Thus, the amended section abrogates the principle that the judicial power cannot be taken away by legislative action. State ex rel. Bennett v. Bonner (1950), 123 Mont. 414, 214 P.2d 747. The legislation completely negates the state constitutional mandate that "courts of justice shall be open to every person, and speedy remedy be afforded to every injury of person, property, or character . . ." Article II, Section 16, Mont.Const. (1972).

11

IV.

The distinction between legislative and judicial powers brings before us always the rule that the Supreme Court is not at liberty to amend statutes, State, Dept. of Hwys. v. Public Employees Craft Coun. (1974), 165 Mont. 349, 529 P.2d 785, and there is a constitutional prohibition against the exercise of legislative power by courts so that this Court may not alter statutes. State ex rel. Grant v. Eaton (1943), 114 Mont. 199, 133 P.2d 588.

However, the legislature provided in § 71 of Chapter 464, Laws of Montana (1987), which includes the legislation we are considering here, that if a part of the act is invalid, all valid parts that are severable from the invalid part remain in effect, and that if a part of the act is invalid in one or more of its applications, the part remains in effect in all valid applications that are severable from the invalid applications.

Where an enactment contains a severability clause, the presumption is that the valid portions would have been enacted without the invalid parts. State ex rel City of Missoula v. Holmes (1935), 100 Mont. 256, 47 P.2d 624.

Applying the severability provisions of Chapter 464, Laws of Montana (1987), the effect of our decision leaves subsection (2) of § 39-71-741, in effect as follows:

> (2) (a) If an insurer has accepted initial liability for an injury, permanent total and

12

permanent partial wage supplement benefits may be converted in whole to a lump-sum payment.

(b) [Invalid.]

(c) The agreement is subject to department approval. The department may approve an agreement if:

(i) there is a reasonable dispute concerning the amount of the insurer's future liability or benefits; or

(ii) the amount of the insurer's projected liability is reasonably certain and the settlement amount is not substantially less than the present value of the insurer's liability.

(d) [Invalid.]

(e) Upon approval, the agreement constitutes a compromise and release settlement and may not be reopened by the department.

It will be noted that the words "or by any court" are not included on the foregoing subdivision (e) of subsection 2 of § 39-71-741, MCA, as a valid remaining part of the enactment. The deletion of those words is necessary because, again, the judicial power cannot be taken away by legislative action.

After deletion of the invalid parts, as required by the severability clause, a controversy between an insurer and a worker as to the propriety of a lump-sum settlement upon which they cannot agree, would constitute a dispute concerning benefits subject to a petition to the Workers' Compensation judge for a determination

13

after satisfying the dispute resolution requirements otherwise provided in the Workers' Compensation provisions. Section 39-71-2905, MCA.

V.

Subsection (3) of § 39-71-741, MCA, also concerns itself with permanent partial wage supplement benefits. The principal difference between it and subsection (2) of the same statute is that subsection (2) relates to conversion of benefits in whole to a lump-sum payment, whereas subsection (3) relates to a conversion in part to a lump-sum advance.

The same reasons for invalidity that apply to subsection (2) foregoing apply also to the provisions of subsection (3). There again it is provided that the conversion may only be made upon the agreement between a complainant and an insurer, and that the parties' failure to reach an agreement is not a dispute over which a mediator or the Workers' Compensation Court has jurisdiction. For the reasons stated foregoing under subsection (2), we find those particular provisions of subsection (3) invalid, the effect of which is to leave subsection (3) as follows:

> (3) (a) Permanent partial wage supplement benefits may be converted in part to a lump-sum advance.
>
> (b) [Invalid.]
>
> (c) The agreement is subject to department approval. The department may approve an

14

agreement if the parties demonstrate that the claimant has financial need that:

(i) relates to the necessities of life or relates to an accumulation of debt incurred prior to injury; and

(ii) arises subsequent to the date of injury or arises because of reduced income as a result of the injury.

(d) [Invalid.]

## VI.

While Ingraham is not directly concerned with the provisions of subsection (1) of § 39-71-741, MCA, it is one of the three subsections that have been considered both in the application and by the respondents and the legal situation therein involved is much the same. There is no reason not to declare in this judgment the same rule with respect to subsection (1) as we said foregoing respecting subsections (2) and (3). Therefore the effect of this decision, insofar as it applies to subsection (1) would leave the statute in effect as follows:

(1) (a) Benefits may be converted in whole to a lump sum:

(i) if a claimant and an insurer dispute the initial compensability of an injury; and

(ii) [invalid.]

(b) The agreement is subject to department approval. The department may disapprove an agreement under this section only if there is not a reasonable dispute over compensability.

15

(c) Upon approval, the agreement constitutes a compromise and release settlement and may not be reopened by the department.

(d) [Invalid.]

## VII.

In Phelps v. Hillhaven Corp. (1988), 231 Mont. 245, 752 P.2d 737, we held that an injured worker's right to Workers' Compensation vests at the time of the injury. In Carmichael v. Workers' Compensation Court (Mont. 1988), 763 P.2d 1122, 45 St.Rep. 2012, we held that the statute mandating binding mediation was invalid where the injury occurred before the effective date of the mediation statute, which was also contained in Chapter 464, Laws of Montana (1987). Thus, our decision here does not affect cases which occurred prior to the effective date of the amendment. The department has recognized this. Since Carmichael, supra, it has been the practice in pre-1987 claims to petition the Workers' Compensation Court for lump-sum settlements in the same manner as the earlier statutes provided. In those cases where the injury occurred after 1987, the department has been applying provisions of the amended statute insofar as it relates to lump-sum settlements.

This opinion has no effect upon the remaining provisions of § 39-71-741, MCA, as amended, which have not been discussed here,

and about which the parties have raised no issues before this Court in these original proceedings.

Otherwise, the rulings and decisions made in this opinion and the effect of those rulings as set forth in this opinion shall be and constitute a declaratory judgment and this opinion shall be and constitute such a judgment without further action or other documents or instruments being filed.

_____
                                    Justice

We concur:

_____
        Chief Justice

_____

_____

_____

_____
          Justices

17

Justice John C. Sheehy, specially concurring:

I have signed the foregoing Opinion, which I agree with in total. I add these additional comments, because while they are not necessarily judicial in tone or approach, they record some vital reasons why the Opinion in this case is necessary.

In Montana, there are three ways to provide coverage for medical expenses and wage loss when workers are injured in their employment. The employer, if it is financially sound enough, may be a self-insurer under Plan I; or an employer may provide Workers' Compensation coverage by contracting with a private insurer licensed to do business in the state, a method described as Plan II; or a third way to obtain such coverage is for the employer to apply for insurance to the State Insurance Fund, known as Plan III.

A student of government will discern an immediate problem with Plan III: the State Insurance Fund was until 1990 operated by the same agency that is charged with the administration of the Workers' Compensation Act. The agency had two conflicting duties. It dealt as an insurer, adverse to the injured worker when the State Insurance Fund was concerned; it had to supervise the activities of private insurers and self-insurers, presumably to protect the injured worker, where the State Insurance Fund itself was not concerned.

18

In the decade of the '80s, the adversarial attitude of the State Insurance Fund to the worker permeated and carried over into its administration of the rest of the Workers' Compensation Act. Moreover, the Fund was terribly mismanaged. The result was that many injured workers, in order to obtain official recognition of their rights, have had to hire lawyers to enforce their claims. The insurers, in turn, hired lawyers so that even for the simplest claims the whole business was awash in litigation.

Except for a few notable cases, self-insurers and private insurers seemed to have met the flood of claims without serious financial impairment. The State Insurance Fund, however, became hopelessly mired in financial difficulties. The managers of the State Insurance Fund and the agency found an easy target to blame: it was the lawyers and the courts that were causing all the trouble.

So it was that in 1987, state employees who were managers of the Division of Workers' Compensation prodded the legislature into a comprehensive revamping of the Workers' Compensation laws. S.B. 315 was introduced at the request of Governor Ted Schwinden. The bill became law as Ch. 464, Laws of Montana (1987). Its purpose as far as the courts were concerned is easily extracted from the opening paragraphs which declare public policy, especially this paragraph:

> (3) Montana's Workers' Compensation and Occupational Disease Insurance systems are intended to be primarily self-administering. Claimants should be able to speedily obtain benefits, and employers should be able to provide coverage at reasonably constant rates. To meet these objectives, the system must be designed <u>to minimize</u>

19

> reliance upon lawyers and the courts to obtain benefits and interpret liabilities.

Thus, in childlike simplicity did the legislature purport to remove from the courts their time-honored duty to interpret liabilities.

Amazingly, S.B. 315 cruised easily through the two houses of the legislature. In the Senate, whose 50 members were composed of 25 Democrats and 25 Republicans, that measure passed on third reading by a vote of 44-6. In the House of Representatives, which had 51 Republicans and 49 Democrats, it passed 70-29 with one excused. This, in spite of the fact that the measure stripped the worker of many important protections afforded to him under the old Act. One of those strippings was the requirement that to obtain a lump sum settlement, the injured worker must first have the concurrence of the insurer. Without such concurrence, as the foregoing opinion demonstrates, not only could the worker not get into the courts, he or she was unable even to petition the administration itself for relief, no matter how dire his or her circumstances might be.

In the nearly three years since the adoption of the Act, the effect of the lump sum settlements provision is readily demonstrated. It might be said in favor of the self-insurers and insurers, that they are somewhat more amenable to lump sum settlements than is the counterpart State Insurance Fund. The following table will demonstrate:

--------------------------------------------------------

Lump-sum settlements approved May 15, 1989
through February 13, 1990
as reported in <u>Montana Law Week</u>

Plan I and II (self-insurers and insurers):

| Total Settlements | Pre-1987 Claims | % of Total | Post-1987 Claims | % of Total |
|---|---|---|---|---|
| 632 | 535 | 85% | 97 | 15% |

Plan III (State Fund):

| Total Settlements | Pre-1987 Claims | % of Total | Post-1987 Claims | % of Total |
|---|---|---|---|---|
| 564 | 538 | 95% | 26 | 5% |

------------------------------------------------------------

Some of the foregoing disparity with respect to settlements of pre-1987 claims compared to post-1987 claims may be explained by the fact that the post-1987 claims are relatively new and perhaps not yet ready for lump sum consideration. The three years since the Act was adopted, however, indicate that little progress was made toward any lump sum settlements of post-1987 claims. The cardinal reason undoubtedly is that before application for a lump sum settlement can be made, both the insurer and the worker must agree on the amount.

To some degree, the public policy declared in the 1987 legislation to eliminate lawyers and courts has been successful. A number of good lawyers have dropped out of Workers' Compensation practice because of the stumbling blocks placed in the way of aiding injured workers through lawyers under the revamped Workers' Compensation laws.

In the three years since the passage of the Act, the management has continued to frighten employers by threats of increased premiums. Hoping to cure a bad situation, the legislature in 1989 separated the State Insurance Fund from the administrative division of the Workers' Compensation Act. The State Insurance Fund has been converted into the "State Compensation Mutual Insurance Fund." It is now a "mutual insurance carrier." Section 39-71-2314, MCA. My information is that the separated carrier, now that it is no longer subject to the wage increase limits imposed on other state employees, immediately granted large wage increases to its managers for now doing the same adversarial job as before. From this management, I suspect, we will find little improvement in the financial crisis, unless that management can saddle employers insured under Plan III with a huge bonded indebtedness, a plan to defer to the future the payment for the sins of the past. Thus, in addition to a 25% cut in benefits to injured workers, is the panacea devoutly wished for by management.

John C. Sheehy
_____
Justice