No. 01-671

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 112

STATE OF MONTANA,

        Plaintiff and Respondent,

    v.

JAMES MATHIS,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and for the County of Missoula, Cause No. DC-01-98,
The Honorable Douglas G. Harkin, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

        James Mathis (pro se), Jackson, Wyoming

        For Respondent:

        Hon. Mike McGrath, Attorney General; C. Mark Fowler,
Assistant Attorney General, Helena, Montana

        Fred Van Valkenburg, Missoula County Attorney; Kirsten LaCroix, Deputy
County Attorney, Missoula, Montana

Submitted on Briefs:  October 17, 2002

Decided:  April 25, 2003

Filed:

_____
Clerk

Justice Jim Regnier delivered the Opinion of the Court.

¶1 After receiving a citation for speeding in a construction zone, Appellant James Mathis challenged the constitutionality of § 61-8-314, MCA, contending that the provision unlawfully delegated legislative authority to an administrative agency and/or private party. The District Court for the Fourth Judicial District Court, Missoula County, rejected Mathis's constitutional challenge and the case proceeded to a jury trial. Mathis moved for a directed verdict following the close of the State's case-in-chief. The District Court denied Mathis's motion and the jury subsequently convicted Mathis of the offense. Mathis appeals from the District Court's conclusions regarding the constitutional issues and from its denial of his motion for a directed verdict. We affirm.

¶2 Mathis raises the following issues on appeal:

¶3 1. Does § 61-8-314, MCA, unconstitutionally delegate legislative authority to an administrative agency or private party?

¶4 2. Did the District Court err when it denied Mathis's motion for a directed verdict based on insufficiency of the evidence?

## BACKGROUND

¶5 Prior to September 2000, the Department of Transportation ("DOT") contracted with ECM, Inc., to perform construction on Interstate 90 east of Missoula, Montana. ECM subcontracted to Alpine Construction, Inc., its duty to post construction and reduced speed limit signs in the construction zone. Alpine Construction, Inc., posted temporary signs alerting motorists to the construction which lay ahead approximately 8250 feet prior to where

2

ECM commenced work. The speed limit signs gradually reduced the speed of traffic from seventy-five miles per hour to thirty-five miles per hour nearest the work area. At the end of the construction zone, a sign indicated a return to the normal seventy-five mile per hour speed limit.

¶6 On September 6, 2000, a Montana Highway Patrol officer encountered Mathis's vehicle traveling fifty-three miles per hour in the thirty-five mile per hour zone on Interstate 90 near Turah, Montana. Therefore, the officer issued Mathis a speeding ticket pursuant to § 61-8-314, MCA. Mathis subsequently pled not guilty in the Missoula County Justice Court and moved to dismiss the charge on the grounds that (1) § 61-8-314, MCA, unconstitutionally delegated legislative authority to the executive branch and/or to private parties and (2) the DOT and/or private contractor did not follow proper procedure to reduce the speed limit in the construction zone. The Justice Court denied Mathis's motion and a jury convicted Mathis of the offense on February 20, 2001. On March 2, 2001, Mathis appealed the conviction to the District Court.

¶7 In District Court, Mathis moved to dismiss the charge on the same grounds. On May 17, 2001, the District Court denied Mathis's motion and the case proceeded to trial. Mathis moved for a directed verdict following the State's presentation of its case-in-chief. The District Court denied Mathis's motion and the jury convicted Mathis of the offense on May 31, 2001. On July 30, 2001, Mathis filed a notice of appeal challenging the District Court's conclusions with regard to the constitutionality of § 61-8-314, MCA, and its denial of his motion for a directed verdict.

## STANDARD OF REVIEW

¶8      Whether a statute is constitutional is a question of law. We review a district court's application of the Constitution to determine if it is correct. *State v. Stanko*, 1998 MT 321, ¶ 14, 292 Mont. 192, ¶ 14, 974 P.2d 1132, ¶ 14. It is the duty of courts, if possible, to construe statutes in a manner that avoids unconstitutional interpretation. *Stanko*, ¶ 15. We review a district court's decision to deny a criminal defendant's motion for a directed verdict for an abuse of discretion. *State v. Billedeaux*, 2001 MT 9, ¶ 8, 304 Mont. 89, ¶ 8, 18 P.3d 990, ¶ 8.

## DISCUSSION

## ISSUE ONE

¶9      Does § 61-8-314, MCA, unconstitutionally delegate legislative authority to an administrative agency or private party?

¶10     Section 61-8-314, MCA, provides, in pertinent part:

> (3) The speed limit in a construction zone or in a work zone must be set by the department of transportation or the local authority based on traffic conditions or the condition of the construction, repair, maintenance, or survey project.

> (4)(a) If the department of transportation, the local authority, the utility company, or the private contractor determines, based on traffic conditions or the condition of the construction, repair, maintenance, or survey project, that special speed limits in work zones or construction zones are warranted, then the department, the local authority, the utility company, or the private contractor shall post signs that:

> (i) conform to the department of transportation's manual on uniform traffic control devices;

4

(ii) indicate the boundaries of the construction zone and the work zone; and

(iii) display the speed limit in effect within both zones.

. . . .

(5) (a) A person convicted of a traffic violation in a work zone is guilty of a misdemeanor. Upon arrest and conviction, the person shall be punished by a fine of not less than double the penalty provided for the violation in part 7 of this chapter.

(b) A person convicted of a traffic violation in a construction zone is guilty of a misdemeanor. Upon arrest and conviction, the person is subject to the penalty provided for the violation in part 7 of this chapter.

¶11 Mathis contends that the Legislature cannot delegate law-making functions, such as the establishment of speed limits, to an administrative agency or private party. Mathis admits that the Legislature can delegate ministerial functions so long as it provides clear standards and guidelines to the implementing entity. Mathis argues that § 61-8-314, MCA, fails to articulate the requisite guidelines, vesting "unbridled discretion" in the DOT. Accordingly, Mathis insists that we must strike § 61-8-314, MCA, down as an unconstitutional delegation of legislative authority.

¶12 The State argues that § 61-8-314, MCA, articulates "specific standards for the DOT or other entities performing roadwork to follow when reducing speed limits in a construction zone." According to the State, the Legislature expressed such standards by requiring the entity to affix speed limits in accordance with the "traffic conditions or the condition of the construction, repair, maintenance, or survey project." Therefore, the State concludes that

5

§ 61-8-314, MCA, sufficiently satisfies the requirements imposed upon the Legislature for delegating ministerial functions.

¶13 The District Court concluded that § 61-8-314, MCA, is constitutional in that it sets forth, with reasonable clarity, the limitations on the DOT's discretion in setting speed limits in construction and work zones and does not delegate the establishment of a crime to either the DOT or private contractors.

¶14 Article III, Section 1, of the Montana Constitution provides:

> **Separation of powers.** The power of the government of this state is divided into three distinct branches–legislative, executive, and judicial. No person or persons charged with the exercise of power properly belonging to one branch shall exercise any power properly belonging to either of the others, except as in this constitution expressly directed or permitted.

¶15 We have previously held that the authority to establish speed limits is legislative in nature. *See Lee v. State* (1981), 195 Mont. 1, 8, 635 P.2d 1282, 1286; *Stanko*, ¶ 28. The Legislature may constitutionally delegate its legislative functions to an administrative agency, but it must provide, with reasonable clarity, limitations upon the agency's discretion and provide the agency with policy guidance. *In re Petition to Transfer Territory*, 2000 MT 342, ¶ 13, 303 Mont. 204, ¶ 13, 15 P.3d 447, ¶ 13. In *Bacus v. Lake County* (1960), 138 Mont. 69, 78, 354 P.2d 1056, 1061, we stated the rule as follows:

> The law-making power may not be granted to an administrative body to be exercised under the guise of administrative discretion. Accordingly, in delegating powers to an administrative body with respect to the administration of statutes, the legislature must ordinarily prescribe a policy, standard, or rule for their guidance and must not vest them with an arbitrary and uncontrolled discretion with regard thereto, and a statute or ordinance which is deficient in this respect is invalid. In other words, in order to avoid the pure delegation of

legislative power by the creation of an administrative agency, the legislature must set limits on such agency's power and enjoin on it a certain course of procedure and rules of decision in the performance of its function; and, if the legislature *fails to prescribe with reasonable clarity the limits of power delegated to an administrative agency, or if those limits are too broad*, its attempt to delegate is a nullity.

On the other hand, a statute is complete and validly delegates administrative authority when nothing with respect to a determination of what is the law is left to the administrative agency, and *its provisions are sufficiently clear, definite, and certain to enable the agency to know its rights and obligation*.

¶16 In *Duck Inn, Inc. v. Montana State Univ.* (1997), 285 Mont. 519, 949 P.2d 1179, Montana State University–Northern ("Northern") rented its facilities to private persons and organizations for parties, reunions, conventions, and receptions in order to generate supplemental revenue. The Duck Inn, a local Montana corporation, filed a complaint for declaratory judgment and application for preliminary injunction against Northern. The Duck Inn argued, in part, that the statute permitting Northern to lease its facilities to private parties unconstitutionally delegated legislative authority to an administrative agency.

¶17 The relevant portion of the statute in question provided that the regents of the Montana university system may:

rent the facilities to other public or private persons, firms, and corporations for such uses, at such times, for such periods, and at such rates as in the regents' judgment will be consistent with the full use thereof for academic purposes and will add to the revenues available for capital costs and debt service[.]

7

Section 20-25-302(5), MCA (1993). Duck Inn argued that the "consistent with the full use thereof" language vested legislative authority in the regents without specific guidelines for implementing the powers.

¶18 We rejected Duck Inn's constitutional challenge. In so doing, we concluded:

> [I]t is clear that § 20-25-302, MCA (1993), is not an unconstitutional delegation of legislative authority to the board of regents. The policy underlying the statute is set forth in the statute; that policy is to increase revenues available for the capital costs of, and debt service on, campus facilities. The implicit, but clear, rationale behind the statute is to minimize the tax support necessary to fund units of the Montana university system by leasing campus facilities. Likewise, § 20-25-302, MCA (1993), expressly constrains the leasing of such facilities by mandating that the leasing must be consistent with full use of the facilities for the academic purposes for which they were established. Here, this constraint on the board of regents is the "standard" or "guide" required . . . for a proper legislative delegation of power.
>
> The Duck Inn contends, in this regard, that the "regents' discretion" language contained in § 20-25-302, MCA (1993), provides insufficient limits on the legislative delegation of power. It provides no legal authority for its position, however, and we conclude that the regents' discretion is sufficiently limited by the statutory requirements that the leasing be consistent with the full use of the facilities for academic purposes and produce revenues for capital costs or debt service.

*Duck Inn, Inc.*, 285 Mont. at 525-26, 949 P.2d at 1183.

¶19 Based on the same analysis employed in *Duck Inn, Inc.*, we conclude that § 61-8-314, MCA, does not unconstitutionally delegate legislative authority to an administrative body or private party. Here, the implicit, but clear, rationale behind the statute is to protect drivers and workers in construction and work zones. The penalty for committing a traffic offense in a work zone, "not less than double the penalty" for similar offenses committed outside the confines of a work zone, lends credence to the implicit policy rationale.

8

¶20 Contrary to Mathis's suggestion, § 61-8-314, MCA, does not grant unfettered discretion to establish traffic regulations in construction and work zones. Rather, § 61-8-314, MCA, requires the respective entity to establish speed limits in construction and work zones "based on traffic conditions or the condition of the construction, repair, maintenance, or survey project." Construction and work zones on Montana highways presumably encompass a diverse set of driving conditions. Because of this, establishing the speed limit for every construction project would be an impractical, if not impossible, task for the Legislature. Enumerating every possible factor which might impact construction zone safety would be similarly unrealistic. Therefore, it makes sense to delegate these duties to the entities most familiar with the nuances of each project.

¶21 Mathis cites several cases in which we struck down delegating statutes as unconstitutional. Admittedly, the distinction between an unconstitutional versus a constitutional delegation appears slight in some circumstances. However, "[t]he constitutionality of a legislative enactment is *prima facie* presumed, and every intendment in its favor will be made unless its unconstitutionality appears beyond a reasonable doubt." *Ingraham v. Champion Intern.* (1990), 243 Mont. 42, 47, 793 P.2d 769, 772. Mathis simply has not overcome his burden on appeal to establish the unconstitutionality of § 61-8-314, MCA, beyond a reasonable doubt. For the foregoing reasons, we conclude that the above caveat placed upon local entities sufficiently limits the entities' discretion such that the prescription does not constitute an unconstitutional delegation of legislative authority. The District Court did not err in rejecting Mathis's constitutional challenge to § 61-8-314, MCA.

¶22 As an aside, Mathis contends that, regardless of our holding with respect to an administrative agency, *Ingraham* prohibits legislative delegation to a private party. In *Ingraham*, we noted that the Legislature delegated "absolute discretion" to a private party. We observed that, if the Legislature had delegated legislative authority to an administrative agency, it would have had to prescribe standards and guides for the grant of that power. In *Ingraham*, however, the Legislature provided no guidance when it delegated to a private entity. While we concluded that the Legislature could not do this, we did not preclude the delegation based on the entity's status as a private party–we did so based on the delegation of "absolute discretion." Consequently, *Ingraham* simply concludes that when delegating legislative authority to a private party, the Legislature cannot ignore the limitations required of it when delegating to an administrative agency.

## ISSUE TWO

¶23 Did the District Court err when it denied Mathis's motion for a directed verdict, based on insufficiency of the evidence?

¶24 When the evidence in a criminal case is insufficient to support a guilty verdict, the court may, either on its own motion or on motion of the defendant, dismiss the action and discharge the defendant. Section 46-16-403, MCA. A defendant is entitled to a directed verdict if reasonable persons could not conclude from the evidence, taken in a light most favorable to the prosecution, that guilt was proven beyond a reasonable doubt. *Billedeaux*, ¶ 8. Therefore, a directed verdict of acquittal is appropriate only when there is no evidence to support a guilty verdict. *Billedeaux*, ¶ 8.

10

¶25 The parties agree that the State had to prove, among other things, that the DOT and private parties complied with the provisions of § 61-8-314, MCA, to obtain a conviction for speeding in a construction zone. Mathis contends that the State failed to prove the requisite compliance beyond a reasonable doubt. First, Mathis states that a private party, not the DOT or local authority, established the relevant speed limits in violation of § 61-8-314(3), MCA. Second, Mathis notes that § 61-8-314(4), MCA, requires the posting of signs to indicate the boundaries of a construction zone. Mathis maintains that the parties failed to post signs indicating the commencement of a construction zone.

¶26 As indicated above, § 61-8-314(3), MCA, provides that "[t]he speed limit in a construction zone or in a work zone must be set by the department of transportation or the local authority based on traffic conditions or the condition of the construction, repair, maintenance, or survey project." Mathis insists that this provision grants authority to establish speed limits exclusively to the DOT or local authority, not to a private entity as occurred here. However, § 61-8-314(4)(a), MCA, provides in relevant part:

> If the department of transportation, the local authority, the utility company, or the private contractor determines, based on traffic conditions or the condition of the construction, repair, maintenance, or survey project, that special speed limits in work zones or construction zones are warranted, then the department, the local authority, the utility company, or the private contractor shall post signs . . . .

¶27 A statute must be read and considered in its entirety and the legislative intent may not be determined from the wording of any particular section or sentence, but only from a consideration of the whole. *State ex rel. Cashmore v. Anderson* (1972), 160 Mont. 175, 184,

11

500 P.2d 921, 926-27. Stated another way, we will read and construe a statute as a whole to give effect to a statute's purpose and avoid an absurd result. *S.L.H. v. State Compensation Mut. Ins. Fund*, 2000 MT 362, ¶ 17, 303 Mont. 364, ¶ 17, 15 P.3d 948, ¶ 17.

¶28 Above, we recognized the Legislature's implicit concern for safety embodied in § 61-8-314, MCA. To this end, the Legislature delegated the requisite authority to the most informed parties. While § 61-8-314(3), MCA, contemplates the establishment of speed limits by the DOT or local authority, § 61-8-314(4), MCA, incorporates private entities' specialized judgment. To interpret § 61-8-314, MCA, so narrowly as to limit the task solely to the DOT and local authority, would render § 61-8-314(4), MCA, meaningless and propagate an absurd result.

¶29 Further, there is substantial evidence in the record to establish that the private parties undertook the requisite action pursuant to a contract with the DOT. Shawn Hollenback, operations manager for Alpine Construction, Inc., testified that the DOT provides independent contractors with various traffic regulation plans, plans which the DOT develops, for construction and work zones. Hollenback testified that the DOT instructs the independent contractors to implement the plan which best "fits the situation." Hollenback testified that the independent contractors selected the DOT signing plan, a plan which provides for speed limit reductions, which applied to the area in question. For the foregoing reasons, we hold that the District Court did not err when it denied Mathis's motion for a directed verdict with regard to § 61-8-314(3), MCA.

¶30 Next, Mathis contends that the State failed to show that the DOT and/or private parties strictly complied with the requirements of § 61-8-314(4), MCA. Section 61-8-314(4), MCA, provides that if it is determined that special speed limits in construction or work zones are warranted, the determining entity must post signs that:

(i) conform to the department of transportation's manual on uniform traffic control devices;

(ii) indicate the boundaries of the construction zone and the work zone; and

(iii) display the speed limit in effect within both zones.

¶31 At trial, Dan Bisom, supervisor of the traffic data collection section of the DOT, testified that the DOT notified ECM that they had to comply with the guidelines in the Manual on Uniform Traffic Control Devices ("MUTCD") to insure workers' safety. In fact, the employment contract entered into evidence as executed by DOT and ECM provides that "[a]ll traffic control must be done in accordance with the MUTCD . . . ." Bisom testified that his maintenance department would notify him if the signs failed to comply with DOT guidelines. Bisom further testified that nobody notified him of any problems with the signs at the area in question. Additionally, Hollenback testified that the signing plan utilized in the area in question conformed to the MUTCD.

¶32 Mathis argues that the parties failed to comply with § 61-8-314(4)(ii), MCA, because they did not post a sign indicating the boundaries of the construction zone. Mathis suggests that a sign stating "construction zone begins here," or something of that nature, must be displayed to comply with § 61-8-314(4)(ii), MCA.

¶33 Mathis offers no authority in support of his position. It is important to point out that Mathis was charged with speeding in a construction zone, not speeding in a work zone. The Legislature has expressly defined the two zones differently and has provided for separate penalties for violations which occur within each zone. As for notification of the commencement of a construction zone, § 61-8-314(4)(ii), MCA, simply provides that the entity shall post signs that "indicate the boundaries of the construction zone." Section 61-8-314(4)(ii), MCA, does not require that this indication come in the form of a "construction zone begins here" sign. The District Court acknowledged this fact upon consideration of Mathis's motion for a directed verdict. It denied Mathis's motion, in part, based on its conclusion that whether signing "indicates the boundaries of the construction zone" is a determination of fact, subject to the jury's consideration.

¶34 As for what the jury had to consider on the issue, Hollenback testified about the signs erected in the construction area. Hollenback testified that a lane closure sign indicated the closing of the right lane one mile prior to the lane closure. Two thousand feet beyond that, a sign indicated a right lane closure in one-half mile. Nine hundred feet later, the parties posted a "Reduced Speed Ahead" sign. Three hundred and thirty feet beyond that, a "Fines Double in Work Zones" sign was displayed. A sixty-five mile per hour speed limit sign was posted three hundred and thirty feet beyond the "Fines Double" sign. Three hundred and thirty feet later, the parties posted an arrow board directing traffic to the appropriate lane. From there, signs incrementally reflected a reduction in speed to fifty-five, forty-five, and thirty-five. As drivers exited the construction area, they passed two additional directives, an

14

"End of Work Zone" sign and a "Resume Speed" sign. Mathis did not call any witnesses on his behalf. Instead, Mathis challenged the State's witnesses on cross-examination and then moved for a directed verdict at the close of the State's case-in-chief.

¶35    Based on the foregoing, we hold that reasonable persons could conclude from the evidence, taken in a light most favorable to the prosecution, that the State proved the elements of the offense, including compliance with § 61-8-314, MCA, beyond a reasonable doubt. Accordingly, Mathis was not entitled to a directed verdict of acquittal and the District Court did not abuse its discretion when it denied his motion.

¶36    Affirmed.

/S/ JIM REGNIER

We Concur:

/S/ KARLA M. GRAY
/S/ PATRICIA COTTER
/S/ JIM RICE

Justice W. William Leaphart dissenting.

¶37     I dissent from the Court's conclusion that § 61-8-314, MCA, does not unconstitu-
tionally delegate legislative authority to an administrative agency or private party.

¶38     Mathis argues that this statute unconstitutionally delegates a law-making function to
an administrative agency and also to a private party.  He argues that, although the legislature
may delegate "ministerial functions," it cannot delegate "law-making functions."  Setting
speed limits, he asserts, is a law-making function.  Additionally, he argues that even when
delegating ministerial functions, the legislature must provide standards and guidelines, and
in this case, the statute gives the DOT "unbridled discretion."

¶39     The State argues that the statute lays out an "implicit but clear," policy rationale of
protecting highway workers' safety.  It argues that the parameters of the statute are clear; the
entity setting the speed limit must base it on "traffic conditions or the condition of the
construction, repair, maintenance, or survey project."   The State asserts that each
construction project in Montana provides a unique set of conditions and the legislature
desired to "allow those closest to the project to limit the risk to highway workers by reducing
the speed limit."

¶40     The District Court concluded that § 61-8-314, MCA, was constitutional in that it set
forth, with reasonable clarity, the limitations on the DOT's discretion in setting speed limits
in construction and work zones and did not delegate the establishment of a crime to either
the DOT or private contractors.

¶41     Article III, Section 1, of the Montana Constitution provides:

Separation of powers. The power of the government of this state is divided into three distinct branches–legislative, executive, and judicial. No person or persons charged with the exercise of power properly belonging to one branch shall exercise any power properly belonging to either of the others, except as in this constitution expressly directed or permitted.

¶42 The legislature may constitutionally delegate its legislative functions to an administrative agency, but it must provide, with reasonable clarity, limitations upon the agency's discretion and provide the agency with policy guidance. *In re Petition to Transfer Territory*, 2000 MT 342, ¶ 13, 303 Mont. 204, ¶ 13, 15 P.3d 447, ¶ 13. A statute is complete and validly delegates administrative authority when nothing with respect to a determination of what is the law is left to the administrative agency, and its provisions are sufficiently clear, definite, and certain to enable the agency to know its rights and obligations. *White v. State* (1988), 233 Mont. 81, 88, 759 P.2d 971, 975 (quoting *Huber v. Groff* (1976), 171 Mont. 442, 457, 558 P.2d 1124, 1132).

¶43 We have previously held that the authority to set speed limits is legislative in nature. *Lee v. State* (1981), 195 Mont. 1, 8, 635 P.2d 1282, 1286 ("[t]he authority conveyed upon the attorney general [to set speed limits in accordance with federal requirements] is clearly an impermissible delegation of legislative authority"). *See also State v. Stanko*, 1998 MT 321, ¶ 28, 292 Mont. 192, ¶ 28, 974 P.2d 1132, ¶ 28 (Montana's "basic rule" statute "impermissibly delegates the basic public policy of how fast is too fast on Montana's highways to 'policemen, judges, and juries for resolution on an *ad hoc* and subjective basis'").

17

¶44    In *Lee*, the statute at issue *required* the attorney general to "declare by proclamation,"

the speed limit "whenever the establishment of such a speed limit by the state is required by

federal law as a condition to the state's continuing eligibility to receive [federal highway]

funds." Section 61-8-304, MCA (1979). We concluded that the statute was a "blatant

handover of the sovereign power of this state to the federal jurisdiction," based on the

mandatory nature of the statute. *Lee*, 195 Mont. at 9, 635 P.2d at 1286. The attorney general

had no discretion nor any factors to consider in setting the speed limit. The statute simply

required that the attorney general set the speed limit to whatever was mandated by federal

law. We noted that in other states where similar legislation was upheld, "either the

legislature pegged the speed limit, or the power granted to a state official or body to adopt

speed limits was couched in permissive instead of mandatory terms." *Lee*, 195 Mont. at 9,

635 P.2d at 1286.

¶45    Section 61-8-314(3), MCA, requires the DOT or a local authority to set the speed

limit "based on traffic conditions or the condition of the construction, repair, maintenance,

or survey project." It does not suffer from the same mandatory requirement held

unconstitutional in *Lee*. The statute lays out factors for the DOT or local authority to

consider. The question remains whether these factors are "sufficiently clear, definite, and

certain to enable the agency to know its rights and obligations." *White*, 233 Mont. at 88, 759

P.2d at 975.

¶46    In *Douglas v. Judge* (1977), 174 Mont. 32, 39, 568 P.2d 530, 534, we held a statute

unconstitutional which authorized the Board of Natural Resources and Conservation to make

18

loans to farmers and ranchers "for any worthwhile project . . . ." There, the statute clearly gave uncontrolled discretion to the Board to make loans.

¶47 In *White,* the legislation at issue, House Bill 700, enacted in 1987, expanded the powers of the Montana Science and Technology Development Board (the Board) by providing the Board with bonding authority to raise money for certain types of "technology investments," and to then invest a percentage of the funds raised in certified Montana capital companies that make technology investments. *White*, 233 Mont. at 83-84, 759 P.2d at 972. The plaintiffs argued that HB 700 granted the Board too much discretion because there were no standards or rules from the legislature to guide the Board in making technology investments. *White*, 233 Mont. at 87-88, 759 P.2d at 975.

¶48 This Court contrasted HB 700 with the legislation which was held constitutional in *Huber*. In *Huber*, the plaintiff asserted that the legislature was too vague in defining "persons and families of lower income," when granting the power to assist those persons in obtaining housing. This Court held that the statutory definition provided an objective standard for the Board to follow when exercising its power. "The size of the family, total income available for housing, availability and cost of housing and ability to enter the housing market at the 'going rate' were all objective criteria requiring only observation and arithmetical calculation." *White*, 233 Mont. at 89, 759 P.2d at 976. In contrast, HB 700 did not "rise to the level of the objective criteria offered in *Huber*." *White*, 233 Mont. at 90, 759 P.2d at 976. The statute stated that technology investments be made "upon favorable determination by the board" of such factors as the relevance of the proposed project to the

19

purposes of the statute, the prospects for collaboration between public and private sectors, the prospects for achieving commercial success, the quality of the specific product and methodology proposed and the availability of matching funds. The Court concluded that these factors "are more akin to general policy considerations underlying the entire technology investment program." *White*, 233 Mont. at 90, 759 P.2d at 976.

¶49    In 1990, we concluded that a section of the Workers' Compensation Act which required a claimant and insurer to agree to convert benefits into a lump sum before application for lump sum conversion could be made was an unconstitutional delegation of legislative authority. *Ingraham v. Champion International* (1990), 243 Mont. 42, 793 P.2d 769. We noted that the legislature could "deny completely any authority to an insurer, a worker, or the department to apply for or to allow lump-sum conversion of workers' benefits." Instead, the legislation delegated an "absolute discretion to the insurer (with whom a worker agrees) as to whether a lump-sum conversion of . . . benefits will be converted." We stated that, "[h]ad the legislature conferred the authority solely upon the administrative agency, the legislature would have been required to lay down the policy or reasons behind the statute and to prescribe standards and guides for the grant of the power to the agency." *Ingraham*, 243 Mont. at 48, 793 P.2d at 772. We concluded that "[t]he power of the legislature to prescribe the amounts, time and manner of payment of workers' compensation benefits, which as we said at the outset of this paragraph is not doubted, has been delegated in subdivision (2), § 39-71-741, MCA, to others. This the legislature may not do." *Ingraham*, 243 Mont. at 48, 793 P.2d at 772.

20

¶50    Here, the standards and guides set out in the statute are more like the general policy standards in *White*. The traffic conditions and the condition of the construction, repair, maintenance, or survey project are not objective criteria "requiring only observation and arithmetical calculation." Individuals assessing these criteria could easily come up with differing opinions on the appropriate speed limit, resulting in an "*ad hoc* and subjective basis" for setting speed limits in construction zones. These standards are too broad and result in an unconstitutional delegation of legislative authority.

¶51    Additionally, the statute unconstitutionally delegates legislative authority to a private party. Although subsection (3) states that the speed limit "must be set" by the DOT, subsection (4) goes on to state that the DOT, "the local authority, *the utility company, or the private contractor*," may determine that special speed limits are warranted in a work or construction zone. If one of the entities listed determines that special speed limits are warranted, the statute then mandates that the entity post signs that conform to specific requirements. This grants the utility company and/or the private contractor the power to set the speed limit in the work or construction zone and is, consequently, an unconstitutional delegation of legislative authority.

¶52    The State argues that "the instances are manifold of delegations of legislative authority to private entities for important governmental functions," and cites § 53-30-601, MCA, for support. Section 53-30-601, MCA, declares the policy rationale that recognizes the benefits of confining convicted persons in private correctional facilities. Granting authority to private entities to house prisoners who have already been convicted in a court

of law of crimes enacted by the legislature is far different than granting authority to a private party to set a speed limit which may result in criminal charges. The first is a ministerial function, while the second is a law-making function. As we said in *Ingraham*, "[t]his the legislature may not do." *Ingraham*, 243 Mont. at 48, 793 P.2d at 772.

¶53    Consequently, because subsections (3) and (4) of § 61-8-314, MCA, contain an unconstitutional delegation of legislative authority, I would conclude that § 61-8-314, MCA, as a whole is unconstitutional.


/S/ W. WILLIAM LEAPHART


Justice James C. Nelson joins in the dissent of Justice Leaphart.


/S/ JAMES C. NELSON

Justice Terry N. Trieweiler dissenting.

¶54    I join Justice Leaphart's dissent from the Court's conclusion that § 61-8-314, MCA, does not unconstitutionally delegate legislative authority to an administrative agency. I differ only with his conclusion in ¶ 51 that subsection (4) of that statute grants a private contractor the authority to "set the speed limit in the work or construction zone." For reasons set forth below, I conclude that the statute delegates that authority only to the Department of Transportation or a local governmental authority.

¶55    I also dissent with the majority's conclusion that the District Court did not error when it denied the Defendant's motion for a directed verdict based on insufficiency of the evidence.

¶56    The parties agree, and the majority correctly concludes, "that the state had to prove, among other things, that the DOT and private parties complied with the provisions of § 61-8-314, MCA, to obtain a conviction for speeding in a construction zone." ¶ 25. However, the majority then ignores the most basic rule of statutory construction by ignoring the expressed language of the statute and omitting the obligations that have been inserted. See § 1-2-101, MCA.

¶57    Section 61-8-314(3), MCA, states that:

The speed limit in a construction zone or in a work zone <u>must be set by the Department of Transportation or the local authority</u> based on traffic conditions or the condition of the construction, repair, maintenance or survey project.

¶58    Subparagraph (4)(a) allows a contractor to "post signs" but provides no authority for the contractor to set the speed limit. Nor is that authority provided in any other part of § 61-

23

8-314, MCA. The statute reserves that authority to the Department of Transportation or "the local authority."

¶59     Here, the State failed to offer evidence that the Department of Transportation set the speed limit. In fact, the only evidence offered suggests that it did not do so. The State's principle witness, its supervisor of traffic data collection, testified that he had no knowledge of the DOT establishing any speed limit at the point in question and documents submitted as exhibits suggest that the private contractor in fact established a speed limit different than that recommended by the Department of Transportation.

¶60     Section 61-8-314(4)(ii), MCA, requires that the signs which are posted in a construction zone "indicate the boundaries of the construction zone. . . ." The signs posted in this construction zone did not do so. The majority goes to great lengths in ¶ 34 of its Opinion to indicate all of the signs posted prior to and after the construction zone. However, strikingly absent is any reference to signs which indicated the boundaries of the construction zone. The Department of Transportation and its contractor simply did not comply with that requirement of § 61-8-314, MCA.

¶61     Finally, § 61-8-314(4)(iii), MCA, requires the DOT or its contractor to "display the speed limit in effect within [the construction zone]." Also conspicuous by its absence is any reference in ¶ 34 of the majority Opinion to speed limit signs located within the construction zone. Based on the record before us, there were none.

¶62     The majority criticizes the Defendant, James Mathis, for not offering authority in support of his argument that the State Department of Transportation failed to comply with

24

the provisions of § 61-8-314, MCA. However, the plain language of the statute speaks for itself. No further authority is necessary. Based on the undisputed facts and the plain language of the statute, the Department of Transportation and its contractor failed to comply with its terms.

¶63    For the reasons set forth in Justice Leaphart's Opinion, with the noted exception, I dissent from the majority's conclusion that § 61-8-314, MCA, did not unconstitutionally delegate legislative authority to an administrative agency. For the reasons set forth in this Opinion, I dissent from the majority's conclusion that the State proved that the DOT and its contractor complied with the provisions of § 61-8-314, MCA, and that it, therefore, proved the necessary elements of its charge against the Defendant, James Mathis.

/S/ TERRY N. TRIEWEILER

Justice James C. Nelson joins ¶¶ 55 through 62 of the foregoing dissent.

/S/ JAMES C. NELSON