JUSTICE LEAPHART
dissenting.
¶37 I dissent from the Court’s conclusion that § 61-8-314, MCA, does not unconstitutionally delegate legislative authority to an administrative agency or private party.
¶38 Mathis argues that this statute unconstitutionally delegates a law-making function to an administrative agency and also to a private party. He argues that, although the legislature may delegate “ministerial functions,” it cannot delegate “law-making functions.” Setting speed limits, he asserts, is a law-making function. Additionally, he argues that even when delegating ministerial functions, the legislature must provide standards and guidelines, and in this case, the statute gives the DOT “unbridled discretion.”
¶39 The State argues that the statute lays out an “implicit but clear,” policy rationale of protecting highway workers’ safety. It argues that the parameters of the statute are clear; the entity setting the speed limit must base it on “traffic conditions or the condition of the construction, repair, maintenance, or survey project.” The State asserts that each construction project in Montana provides a unique set of conditions and the legislature desired to “allow those closest to the project to limit the risk to highway workers by reducing the speed limit.”
¶40 The District Court concluded that § 61-8-314, MCA, was constitutional in that it set forth, with reasonable clarity, the limitations on the DOT’s discretion in setting speed limits in construction and work zones and did not delegate the establishment of a crime to either the DOT or private contractors.
¶41 Article III, Section 1, of the Montana Constitution provides:
Separation of powers. The power of the government of this state is divided into three distinct branches-legislative, executive, and judicial. No person or persons charged with the exercise of power properly belonging to one branch shall exercise any power properly belonging to either of the others, except as in this constitution expressly directed or permitted.
¶42 The legislature may constitutionally delegate its legislative functions to an administrative agency, but it must provide, with reasonable clarity, limitations upon the agency’s discretion and provide the agency with policy guidance. In re Petition to Transfer Territory, 2000 MT 342, ¶ 13, 303 Mont. 204, ¶ 13, 15 P.3d 447, ¶ 13. A statute is complete and validly delegates administrative authority when *390 nothing with respect to a determination of what is the law is left to the administrative agency, and its provisions are sufficiently clear, definite, and certain to enable the agency to know its rights and obligations. White v. State (1988), 233 Mont. 81, 88, 759 P.2d 971, 975 (quoting Huber v. Groff (1976), 171 Mont. 442, 457, 558 P.2d 1124, 1132).
¶43 We have previously held that the authority to set speed limits is legislative in nature. Lee v. State (1981), 195 Mont. 1, 8, 635 P.2d 1282, 1286 (“[t]he authority conveyed upon the attorney general [to set speed limits in accordance with federal requirements] is clearly an impermissible delegation of legislative authority”). See also State v. Stanko, 1998 MT 321, ¶ 28, 292 Mont. 192, ¶ 28, 974 P.2d 1132, ¶ 28 (Montana’s “basic rule” statute “impermissibly delegates the basic public policy of how fast is too fast on Montana’s highways to ‘policemen, judges, and juries for resolution on an ad hoc and subjective basis’ ”).
¶44 In Lee, the statute at issue required the attorney general to “declare by proclamation,” the speed limit “whenever the establishment of such a speed limit by the state is required by federal law as a condition to the state’s continuing eligibility to receive [federal highway] funds.” Section 61-8-304, MCA (1979). We concluded that the statute was a “blatant handover of the sovereign power of this state to the federal jurisdiction,” based on the mandatory nature of the statute. Lee, 195 Mont. at 9, 635 P.2d at 1286. The attorney general had no discretion nor any factors to consider in setting the speed limit. The statute simply required that the attorney general set the speed limit to whatever was mandated by federal law. We noted that in other states where similar legislation was upheld, “either the legislature pegged the speed limit, or the power granted to a state official or body to adopt speed limits was couched in permissive instead of mandatory terms.” Lee, 195 Mont. at 9, 635 P.2d at 1286.
¶45 Section 61-8-314(3), MCA, requires the DOT or a local authority to set the speed limit “based on traffic conditions or the condition of the construction, repair, maintenance, or survey project.” It does not suffer from the same mandatory requirement held unconstitutional in Lee. The statute lays out factors for the DOT or local authority to consider. The question remains whether these factors are “sufficiently clear, definite, and certain to enable the agency to know its rights and obligations.” White, 233 Mont. at 88, 759 P.2d at 975.
¶46 In Douglas v. Judge (1977), 174 Mont. 32, 39, 568 P.2d 530, 534, we held a statute unconstitutional which authorized the Board of Natural Resources and Conservation to make loans to farmers and *391 ranchers “for any worthwhile project ...” There, the statute clearly gave uncontrolled discretion to the Board to make loans.
¶47 In White, the legislation at issue, House Bill 700, enacted in 1987, expanded the powers of the Montana Science and Technology Development Board (the Board) by providing the Board with bonding authority to raise money for certain types of “technology investments,” and to then invest a percentage of the funds raised in certified Montana capital companies that make technology investments. White, 233 Mont. at 83-84,759 P.2d at 972. The plaintiffs argued that HB 700 granted the Board too much discretion because there were no standards or rules from the legislature to guide the Board in making technology investments. White, 233 Mont. at 87-88, 759 P.2d at 975.
¶48 This Court contrasted HB 700 with the legislation which was held constitutional in Huber. In Huber, the plaintiff asserted that the legislature was too vague in defining “persons and families of lower income,” when granting the power to assist those persons in obtaining housing. This Court held that the statutory definition provided an objective standard for the Board to follow when exercising its power. “The size of the family, total income available for housing, availability and cost of housing and ability to enter the housing market at the ‘going rate’ were all objective criteria requiring only observation and arithmetical calculation.” White, 233 Mont. at 89, 759 P.2d at 976. In contrast, HB 700 did not “rise to the level of the objective criteria offered in Huber.” White, 233 Mont. at 90, 759 P.2d at 976. The statute stated that technology investments be made “upon favorable determination by the board” of such factors as the relevance of the proposed project to the purposes of the statute, the prospects for collaboration between public and private sectors, the prospects for achieving commercial success, the quality of the specific product and methodology proposed and the availability of matching funds. The Court concluded that these factors “are more akin to general policy considerations underlying the entire technology investment program.” White, 233 Mont. at 90, 759 P.2d at 976.
¶49 In 1990, we concluded that a section of the Workers’ Compensation Act which required a claimant and insurer to agree to convert benefits into a lump sum before application for lump sum conversion could be made was an unconstitutional delegation of legislative authority. Ingraham v. Champion International (1990), 243 Mont. 42, 793 P.2d 769. We noted that the legislature could “deny completely any authority to an insurer, a worker, or the department to apply for or to allow lump-sum conversion of workers’ benefits.” Instead, the legislation delegated an “absolute discretion to the insurer *392 (with whom a worker agrees) as to whether a lump-sum conversion of ... benefits will be converted.” We stated that, “[h]ad the legislature conferred the authority solely upon the administrative agency, the legislature would have been required to lay down the policy or reasons behind the statute and to prescribe standards and guides for the grant of the power to the agency.” Ingraham, 243 Mont. at 48, 793 P.2d at 772. We concluded that “[t]he power of the legislature to prescribe the amounts, time and manner of payment of workers’ compensation benefits, which as we said at the outset of this paragraph is not doubted, has been delegated in subdivision (2), § 39-71-741, MCA, to others. This the legislature may not do.” Ingraham, 243 Mont. at 48, 793 P.2d at 772.
¶50 Here, the standards and guides set out in the statute are more like the general policy standards in White. The traffic conditions and the condition of the construction, repair, maintenance, or survey project are not objective criteria “requiring only observation and arithmetical calculation.” Individuals assessing these criteria could easily come up with differing opinions on the appropriate speed limit, resulting in an “ad hoc and subjective basis” for setting speed limits in construction zones. These standards are too broad and result in an unconstitutional delegation of legislative authority.
¶51 Additionally, the statute unconstitutionally delegates legislative authority to a private party. Although subsection (3) states that the speed limit “must be set” by the DOT, subsection (4) goes on to state that the DOT, “the local authority, the utility company, or the private contractor,” may determine that special speed limits are warranted in a work or construction zone. If one of the entities listed determines that special speed limits are warranted, the statute then mandates that the entity post signs that conform to specific requirements. This grants the utility company and/or the private contractor the power to set the speed limit in the work or construction zone and is, consequently, an unconstitutional delegation of legislative authority.
¶52 The State argues that “the instances are manifold of delegations of legislative authority to private entities for important governmental functions,” and cites § 53-30-601, MCA, for support. Section 53-30-601, MCA, declares the policy rationale that recognizes the benefits of confining convicted persons in private correctional facilities. Granting authority to private entities to house prisoners who have already been convicted in a court of law of crimes enacted by the legislature is far different than granting authority to a private party to set a speed limit which may result in criminal charges. The first is a ministerial function, while the second is a law-making function. As we said in *393 Ingraham, “[t]his the legislature may not do.” Ingraham, 243 Mont. at 48, 793 P.2d at 772.
¶53 Consequently, because subsections (3) and (4) of § 61-8-314, MCA, contain an unconstitutional delegation of legislative authority, I would conclude that § 61-8-314, MCA, as a whole is unconstitutional.
JUSTICE NELSON joins in the dissent of JUSTICE LEAPHART.