No. 97-486

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 321

STATE OF MONTANA,

Plaintiff and Respondent,

v.

RUDY STANKO,

Defendant and Appellant.

APPEAL FROM: District Court of the Sixteenth Judicial District,

In and for the County of Garfield,

The Honorable Joe L. Hegel, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Penelope S. Strong (argued), Attorney at Law;

Livingston, Montana

For Respondent:

Hon. Joseph P. Mazurek, Attorney General (argued);

Patricia J. Jordan, Assistant Attorney General; Helena, Montana

Nickolas C. Murnion, Garfield County Attorney; Jordan, Montana

Argued: October 14, 1998

Submitted: November 17, 1998

Decided: December 23, 1998

No

Filed:

_____

Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

**¶1. The defendant, Rudy Stanko, was charged by a complaint filed in the Justice Court for Garfield County with failing to drive in a reasonable and prudent manner in violation of § 61-8-303(1), MCA. Following trial by jury, he was found guilty of that offense and was sentenced. He appealed his conviction to the District Court for the Sixteenth Judicial District in Garfield County where he was recharged by information with the same offense. In District Court, he again pled not guilty, moved to dismiss the charge against him on the basis that the statute pursuant to which he was charged was unconstitutionally vague, and following denial of that motion, received a second jury trial. He was again convicted and sentenced and now appeals that conviction to this Court. We reverse the judgment of the District Court.**

**¶2. The dispositive issue on appeal is whether § 61-8-303(1), MCA, is so vague that it violates the Due Process Clause found at Article II, Section 17, of the Montana Constitution.**

FACTUAL BACKGROUND

**¶3. Since the State of Montana was the prevailing party in the District Court, we will accept those facts from the record which are most favorable to the State. *See State v. Crisp* (1991), 249 Mont. 199, 204, 814 P.2d 981, 984; *City of Whitefish v. O'Shaughnessy* (1985), 216 Mont. 433, 437, 704 P.2d 1021, 1024. Viewed from that perspective, the following facts form the basis for the arrest and conviction of Rudy Stanko for violating § 61-8-303(1), MCA, Montana's "basic rule" regarding the speed at which vehicles can be operated on Montana's highways.**

**¶4. Kenneth Breidenbach is a member of the Montana Highway Patrol who, at the**

time of trial and the time of the incident which formed the basis for Stanko's arrest, was stationed in Jordan, Montana. On March 10, 1996, he was on duty patrolling Montana State Highway 24 and proceeding south from Fort Peck toward Flowing Wells in "extremely light" traffic at about 8 a.m. on a Sunday morning, when he observed another vehicle approaching him from behind.

¶5. At Flowing Wells, where Highway 24 intersects with Montana State Highway 200, he stopped or slowed, made a right-hand turn, and proceeded west on Highway 200. About one-half mile from that intersection, in the first passing zone, the vehicle which had been approaching him from behind passed him. He caught up to the vehicle and trailed the vehicle at a constant speed for a distance of approximately eight miles while observing what he referred to as the two or three second rule. He explained that the two or three second rule meant that he maintained a distance between the two vehicles that it would take two to three seconds to travel at the speeds at which the vehicles were being operated. He testified that he clocked the vehicle ahead of him at a steady 85 miles per hour during the time that he followed it. At that speed, the distance between the two vehicles was from 249 to 374 feet.

¶6. When Stanko's vehicle reached a point where the road was wide enough to pull over safely, Officer Breidenbach signaled him to pull over and issued him a ticket for violating § 61-8-303(1), MCA. The basis for the ticket was the fact that Stanko had been operating his vehicle at a speed of 85 miles per hour at a location where Officer Breidenbach concluded it was unsafe to do so.

¶7. The officer testified that the road at that location was narrow, had no shoulders, and was broken up by an occasional frost heave. He also testified that the portion of the road over which he clocked Stanko included curves and hills which obscured vision of the roadway ahead. However, he acknowledged that at a distance of from 249 to 374 feet behind Stanko, he had never lost sight of Stanko's vehicle. The roadway itself was bare and dry, there were no adverse weather conditions, and the incident occurred during daylight hours. Officer Breidenbach apparently did not inspect the brakes on Stanko's vehicle or make any observation regarding its weight. The only inspection he conducted was of the tires, which appeared to be brand new. He also observed that it was a 1996 Camaro, which was a sports car, and that it had a suspension system designed so that the vehicle could be operated at high speeds. He also testified that while he and Stanko were on Highway 24 there were no other vehicles that he observed, that during the time that he clocked Stanko on Highway

200 they approached no other vehicles going in their direction, and that he observed a couple of vehicles approach them in the opposite direction during that eight-mile stretch of highway.

¶8. Although Officer Breidenbach expressed the opinion that 85 miles per hour was unreasonable at that location, he gave no opinion what would have been a reasonable speed, nor did he identify anything about Stanko's operation of his vehicle, other than the speed at which he was traveling, which he considered to be unsafe.

¶9. Stanko testified that on the date he was arrested he was driving a 1996 Chevrolet Camaro that he had just purchased one to two months earlier and which had been operated fewer than 10,000 miles. He stated that the brakes, tires, and steering were all in perfect operating condition, the highway conditions were perfect, and he felt that he was operating his vehicle in a safe manner. He conceded that after passing Officer Breidenbach's vehicle, he drove at a speed of 85 miles per hour, but testified that because he was aware of the officer's presence he was extra careful about the manner in which he operated his vehicle. He felt that he would have had no problem avoiding any collision at the speed that he was traveling. Stanko testified that he was fifty years old at the time of trial, drives an average of 50,000 miles a year, and has never had an accident.

## DISCUSSION

¶10. Is § 61-8-303(1), MCA, so vague that it violates the Due Process Clause found at Article II, Section 17, of the Montana Constitution?

¶11. Stanko contends that § 61-8-303(1), MCA, is unconstitutionally vague because it fails to give a motorist of ordinary intelligence fair notice of the speed at which he or she violates the law, and because it delegates an important public policy matter, such as the appropriate speed on Montana's highways, to policemen, judges, and juries for resolution on a case-by-case basis.

¶12. The State denies that Montana's "basic rule" is unconstitutionally vague, but contends that even if it is impermissibly vague as applied in some situations, Stanko does not have standing to challenge the statute facially because his conduct in this case was clearly prohibited by the statute and "[o]ne to whose conduct a statute clearly applies may not successfully challenge it for vagueness." *Parker v. Levy*

(1974), 417 U.S. 733, 756, 94 S. Ct. 2547, 2562, 41 L. Ed. 2d 439, 458.

¶13. We conclude that operating a relatively new motor vehicle, which is concededly in excellent condition, at a speed of 85 miles per hour, on a clear day during daylight hours, on a dry road in rural Montana with no significant traffic in the area, is not so clearly prohibited by the speed restriction found in § 61-8-303(1), MCA, that Stanko lacks standing to challenge that statute for facial vagueness.

¶14. Whether a statute is constitutional is a question of law. We review a district court's application of the Constitution to determine if it is correct. *See State v. Schnittgen* (1996), 277 Mont. 291, 295-96, 922 P.2d 500, 503.

¶15. We presume that all statutes are constitutional. It is the duty of courts, if possible, to construe statutes in a manner that avoids unconstitutional interpretation. *See State v. Nye* (1997), 283 Mont. 505, 510, 943 P.2d 96, 99; *State v. Lilburn* (1994), 265 Mont. 258, 266, 875 P.2d 1036, 1041, *cert. denied* (1995), 513 U.S. 1078, 115 S. Ct. 726, 130 L. Ed. 2d 630; *State v. Ytterdahl* (1986), 222 Mont. 258, 261, 721 P.2d 757, 759; *Montana Auto Ass'n v. Greely* (1981), 193 Mont. 378, 382, 632 P.2d 300, 303.

¶16. When the constitutionality of a statute is challenged, the party making the challenge bears the burden of proving, beyond a reasonable doubt, that the statute is unconstitutional, and any doubt is to be resolved in favor of the statute. *See Nye*, 283 Mont. at 510, 943 P.2d at 99; *State v. Martel* (1995), 273 Mont. 143, 148, 902 P.2d 14, 17-18; *Monroe v. State* (1994), 265 Mont. 1, 3, 873 P.2d 230, 231.

¶17. A vagueness challenge to a statute or ordinance may be raised on two different bases: (1) because the statute or ordinance is so vague that it is rendered void on its face; or (2) because it is vague as applied in a particular situation. *See Nye*, 283 Mont. at 513, 943 P.2d at 101; *Martel*, 273 Mont. at 149, 902 P.2d at 18; *City of Choteau v. Joslyn* (1984), 208 Mont. 499, 505, 678 P.2d 665, 668.

¶18. Stanko contends that § 61-8-303(1), MCA, to the extent that it regulates speed at which vehicles can be operated on Montana's highways without providing a numerical limit, is facially vague and, therefore, violates Article II, Section 17, of Montana's Constitution, which guarantees to Montana's citizens due process of law.

¶19. Section 61-8-303(1), MCA, provides as follows:

A person operating or driving a vehicle of any character on a public highway of this state shall drive the vehicle in a careful and prudent manner and <u>at a rate of speed no greater than is reasonable and proper under the conditions existing at the point of operation</u>, taking into account the amount and character of traffic, condition of brakes, weight of vehicle, grade and width of highway, condition of surface, and freedom of obstruction to the view ahead. The person operating or driving the vehicle shall drive the vehicle so as not to unduly or unreasonably endanger the life, limb, property, or other rights of a person entitled to the use of the street or highway.

(Emphasis added.)

**¶20. Since there is no evidence in this case that Stanko lost control of his vehicle, or that he endangered any other person or any other person's property, it is clear that he was arrested, charged, and prosecuted for operating his vehicle at a speed that Officer Breidenbach considered unreasonable. The question is whether a statute which regulates speed in the terms set forth above gave Stanko reasonable notice of the speed at which his conduct would violate the law.**

**¶21. The United States Supreme Court has established the following test for whether penal statutes are void for vagueness in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution:**

As generally stated, the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement. Although the doctrine focuses both on actual notice to citizens and arbitrary enforcement, we have recognized recently that the more important aspect of the vagueness doctrine "is not actual notice, but the other principle element of the doctrine--the requirement that a legislature establish minimal guidelines to govern law enforcement." Where the legislature fails to provide such minimal guidelines, a criminal statute may permit "a standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections."

*Kolender v. Lawson* (1983), 461 U.S. 352, 357-58, 103 S. Ct. 1855, 1858, 75 L. Ed. 2d 903, 909 (*citations omitted; alteration in original*).

**¶22. In Montana, we have established the following test for whether a statute is void on its face for vagueness:**

"A statute is void on its face if it fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden." *State v. Woods*, 221 Mont. 17, 22, 716 P.2d 624, 627 (1986); *Joslyn*, 208 Mont. at 505, 678 P.2d at 668. No person should be required to speculate as to whether his contemplated course of action may be subject to criminal penalties. *State v. Conrad*, 197 Mont. 406, 412, 643 P.2d 239, 243 (1982).

*State v. Crisp* (1991), 249 Mont. 199, 202, 814 P.2d 981, 983.

**¶23. In *Grayned v. City of Rockford* (1972), 408 U.S. 104, 92 S. Ct. 2294, 33 L. Ed. 2d 222, the Supreme Court articulated the following relevant values which vague statutes offend:**

It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application.

*Grayned*, 408 U.S. at 108-09, 92 S. Ct. at 2298-99, 33 L. Ed. 2d at 227-28 (footnotes omitted).

**¶24. We have cited with approval the above discussion from *Grayned* in *City of Whitefish v. O'Shaughnessy* (1985), 216 Mont. 433, 440, 704 P.2d 1021, 1025.**

**¶25. We conclude that, as a speed limit, § 61-8-303(1), MCA, does not meet these requirements of the Due Process Clause of Article II, Section 17, of the Montana**

Constitution, nor does it further the values that the void-for-vagueness doctrine is intended to protect.

¶26. For example, while it was the opinion of Officer Breidenbach that 85 miles per hour was an unreasonable speed at the time and place where Stanko was arrested, he offered no opinion regarding what a reasonable speed at that time and place would have been. Neither was the Attorney General, the chief law enforcement officer for the State, able to specify a speed that would have been reasonable for Stanko at the time and place where he was arrested. The Attorney General gave the following response to the following question during argument before this Court:

Q. What speed would have been reasonable and prudent at the locations where he was cited?

A. Again, that would be depending upon the -- it will always be a question of judgment at the time based on the conditions at the time, if there were heavier traffic. I cannot give you a number that would have been reasonable and prudent at that -- it ultimately may come down to a question to be determined by the jury. The officer will exercise his best judgment in applying the statute.

¶27. The difficulty that § 61-8-303(1), MCA, presents as a statute to regulate speed on Montana's highways, especially as it concerns those interests which the void-for-vagueness doctrine is intended to protect, was further evident from the following discussion with the Attorney General during the argument of this case:

Q. Well how many highway patrol men and women are there in the State of Montana?

A. There are 212 authorized members of the patrol. Of that number, about 190 are officers and on the road.

Q. And I understand there are no specific guidelines provided to them to enable them to know at what point, exact point, a person's speed is a violation of the basic rule?

No

A. That's correct, Your Honor, because that's not what the statute requires. We do not have a numerical limit. We have a basic rule statute which requires the officer to take into account whether or not the driver is driving in a careful and prudent manner, using the speed.

Q. And it's up to each of their individual judgments to enforce the law?

A. It is, Your Honor, using their judgment applying the standard set forth in the statute. . . .

Q. Well, if I'm driving down the interstate highway through Montana on a clear day on a dry road with little traffic in the area, at what speed can I assume that I'm complying with the law, or is that up to whichever one of those 190 officers are on duty at that location at that time?

A. It depends, Your Honor, because it will depend upon the application of the statutory factors. Where are you on the interstate highway on a clear road?

Q. Let's say that I've got a vehicle that's new, there are no problems with the brakes, there are no problems with the steering, it's a clear day, the road is dry, the traffic is light, there are no other conditions which make it dangerous for me to travel at a high speed. At what speed can I be assured that I'm not violating the law?

A. Your Honor, my response will be, it depends. There is no numerical limit that I can cite you because it will depend where you are. And it will depend on an officer's discretion ultimately. And it will depend upon your own judgment in the operation of your vehicle. . . .

No

Q. So I just don't know?


A. You don't know, but you have a lot of good guidance provided in the statute. . . . But to provide you with a number, the legislature hasn't given one, and if they do not give us one, we will continue to apply the statutory factors in every circumstance.


**¶28. It is evident from the testimony in this case and the arguments to the Court that the average motorist in Montana would have no idea of the speed at which he or she could operate his or her motor vehicle on this State's highways without violating Montana's "basic rule" based simply on the speed at which he or she is traveling. Furthermore, the basic rule not only permits, but requires the kind of arbitrary and discriminatory enforcement that the due process clause in general, and the void-for-vagueness doctrine in particular, are designed to prevent. It impermissibly delegates the basic public policy of how fast is too fast on Montana's highways to "policemen, judges, and juries for resolution on an *ad hoc* and subjective basis." *Grayned*, 408 U. S. at 109, 92 S. Ct. at 2299, 33 L. Ed. 2d at 228.**

**¶29. For example, the statute requires that a motor vehicle operator and Montana's law enforcement personnel take into consideration the amount of traffic at the location in question, the condition of the vehicle's brakes, the vehicle's weight, the grade and width of the highway, the condition of its surface, and its freedom from obstruction to the view ahead. However, there is no specification of how these various factors are to be weighted, or whether priority should be given to some factors as opposed to others. This case is a good example of the problems inherent in trying to consistently apply all of these variables in a way that gives motorists notice of the speed at which the operation of their vehicle becomes a violation of the law. For all practical purposes, there was no other traffic on the highway at the time that Stanko was arrested, the condition of his vehicle was excellent, the surface of the road was dry, and the view ahead was unobstructed for a distance of at least 249 to 374 feet. On the other hand, the road was narrow, there were hills and curves which presented some degree of obstruction to the view ahead, and there was an occasional frost heave on the surface of the road. A reasonable speed under these circumstances would require a calculation of sight distances and stopping distances for the**

particular vehicle. These functions are normally provided by engineers employed by highway departments who then post signs indicating when it is necessary to reduce speed on a curve or hill crest in order to safely operate a motor vehicle. It is not the kind of decision that the average motor vehicle operator is qualified to make, and not the kind of decision that policemen or highway patrolmen should be called upon to make. Most importantly, for constitutional purposes, even if law enforcement officials were qualified to make those kinds of judgments, the statute would not satisfy the requirement that a motor vehicle operator of average intelligence know what conduct is prohibited and when his or her conduct is going to be subject to criminal penalties.

¶30. For these reasons, we conclude that that part of § 61-8-303(1), MCA, which makes it a criminal offense to operate a motor vehicle "at a rate of speed . . . greater than is reasonable and proper under the conditions existing at the point of operation" is void for vagueness on its face and in violation of the Due Process Clause of Article II, Section 17, of the Montana Constitution.

¶31. We do not, however, mean to imply that motorists who lose control of their vehicle or endanger the life, limb, or property of others by the operation of their vehicle on a street or highway cannot be punished for that conduct pursuant to other statutes, such as § 61-8-301, MCA (reckless driving), or § 61-8-302, MCA (careless driving). We simply hold that Montanans cannot be charged, prosecuted, and punished for speed alone without notifying them of the speed at which their conduct violates the law.

¶32. For these reasons, the judgment of the District Court is reversed. Because we reverse the judgment of the District Court, we need not address the appellant's other argument regarding the assessment of costs and jury fees.


/S/ TERRY N. TRIEWEILER

We Concur:


/S/ JAMES C. NELSON

/S/ WILLIAM E. HUNT, SR.

/S/ W. WILLIAM LEAPHART

Chief Justice J. A. Turnage dissenting.

¶33 I respectfully dissent. The majority opinion holds that § 61-8-303(1), MCA, is void for vagueness on its face and in violation of the Due Process Clause of Article II, Section 17, of the Montana Constitution. Section 61-8-303(1), MCA, states:

A person operating or driving a vehicle of any character on a public highway of this state shall drive the vehicle in a careful and prudent manner and at a rate of speed no greater than is reasonable and proper under the conditions existing at the point of operation, taking into account the amount and character of traffic, condition of brakes, weight of vehicle, grade and width of highway, condition of surface, and freedom of obstruction to the view ahead. The person operating or driving the vehicle shall drive the vehicle so as not to unduly or unreasonably endanger the life, limb, property, or other rights of a person entitled to the use of the street or highway.

¶34 This important statutory provision of our motor vehicle traffic regulations has been the law of Montana since it was enacted by the legislature in 1955 as Section 41, Chapter 263, 1955 Session Laws of Montana. This important traffic regulation has remained unchanged as the law of Montana (with the exception of a minor gender change by the legislature in 1995) since that time.

¶35 Appellant Rudy Stanko challenged this statute as being unconstitutional in 1998 because of vagueness. Apparently for the past forty-three years, other citizens driving upon our highways had no problem in understanding this statutory provision.

¶36 Section 61-8-303(1), MCA, is not vague and most particularly is not unconstitutional as a denial of due process. Therefore, I dissent.

/S/ J. A. TURNAGE

Justice Jim Regnier dissenting.

¶33. I respectfully dissent from the majority opinion which holds that that part of § 61-8-303(1), MCA, which makes it a criminal offense to operate a motor vehicle "at a rate of speed . . . greater than is reasonable and proper under the conditions existing at the point of operation" is void for vagueness on its face and is in violation of the Due Process Clause found at Article II, Section 17, of the Montana Constitution.

¶34. When considering a constitutional challenge to a statute for vagueness, we must first determine whether the enactment reaches any constitutionally protected conduct. *See State v. Lilburn* (1994), 265 Mont. 258, 270, 875 P.2d 1036, 1044. Next, "if the challenged statute is reasonably clear in its application to the conduct of the person bringing the challenge, it cannot be stricken on its face for vagueness." *Lilburn*, 265 Mont. at 270, 875 P.2d at 1044 (citing *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.* (1982), 455 U.S. 489, 494-95, 102 S. Ct. 1186, 1190-91, 71 L. Ed. 2d 362, 369). "One to whose conduct a statute clearly applies may not successfully challenge it for vagueness." *Parker v. Levy* (1974), 417 U.S. 733, 756, 94 S. Ct. 2547, 2562, 41 L. Ed. 2d 439, 458. In applying this analysis to the matter before us, it is clear Stanko must have standing to make this challenge.

¶35. The arresting officer described in detail the roadway where Stanko was operating his vehicle at 85 miles per hour. The roadway was very narrow with no shoulders. There were frost heaves on the road which caused the officer's vehicle to bounce. The highway had steep hills, sharp curves, and multiple no-passing zones. There were numerous ranch and field access roads in the area which ranchers use for bringing hay to their cattle. The officer testified that at 85 miles per hour, there was no way for Stanko to stop in the event there had been an obstruction on the road beyond the crest of a hill. In the officer's judgment, driving a vehicle at the speed of 85 miles per hour on the stretch of road in question posed a danger to the rest of the driving public.

¶36. In my view, Stanko's speed on the roadway where he was arrested clearly falls within the behavior proscribed by the statute. Operating a vehicle at 85 miles per

**hour on a two-lane highway with frost heaves, steep hills, and curves, where farm vehicles may unexpectedly appear, is not reasonable and proper under the conditions. Therefore, I conclude that Stanko has no standing to attack the facial validity of this statute.**

/S/ JIM REGNIER

Justice Karla M. Gray joins in the foregoing dissenting opinion.

/S/ KARLA M. GRAY