JUSTICE REGNIER
delivered the Opinion of the Court.
¶1 After receiving a citation for speeding in a construction zone, Appellant James Mathis challenged the constitutionality of § 61-8-314, MCA, contending that the provision unlawfully delegated legislative authority to an administrative agency and/or private party. The *380 District Court for the Fourth Judicial District Court, Missoula County, rejected Mathis’s constitutional challenge and the case proceeded to a jury trial. Mathis moved for a directed verdict following the close of the State’s case-in-chief. The District Court denied Mathis’s motion and the jury subsequently convicted Mathis of the offense. Mathis appeals from the District Court’s conclusions regarding the constitutional issues and from its denial of his motion for a directed verdict. We affirm.
¶2 Mathis raises the following issues on appeal:
¶3 1. Does § 61-8-314, MCA, unconstitutionally delegate legislative authority to an administrative agency or private party?
¶4 2. Did the District Court err when it denied Mathis’s motion for a directed verdict based on insufficiency of the evidence?
BACKGROUND
¶5 Prior to September 2000, the Department of Transportation (“DOT”) contracted with ECM, Inc., to perform construction on Interstate 90 east of Missoula, Montana. ECM subcontracted to Alpine Construction, Inc., its duty to post construction and reduced speed limit signs in the construction zone. Alpine Construction, Inc., posted temporary signs alerting motorists to the construction which lay ahead approximately 8250 feet prior to where ECM commenced work. The speed limit signs gradually reduced the speed of traffic from seventy-five miles per hour to thirty-five miles per hour nearest the work area. At the end of the construction zone, a sign indicated a return to the normal seventy-five mile per hour speed limit.
¶6 On September 6, 2000, a Montana Highway Patrol officer encountered Mathis’s vehicle traveling fifty-three miles per hour in the thirty-five mile per hour zone on Interstate 90 near Turah, Montana. Therefore, the officer issued Mathis a speeding ticket pursuant to § 61-8-314, MCA. Mathis subsequently pled not guilty in the Missoula County Justice Court and moved to dismiss the charge on the grounds that (1) § 61-8-314, MCA, unconstitutionally delegated legislative authority to the executive branch and/or to private parties and (2) the DOT and/or private contractor did not follow proper procedure to reduce the speed limit in the construction zone. The Justice Court denied Mathis’s motion and a jury convicted Mathis of the offense on February 20,2001. On March 2,2001, Mathis appealed the conviction to the District Court.
¶7 In District Court, Mathis moved to dismiss the charge on the same grounds. On May 17, 2001, the District Court denied Mathis’s motion and the case proceeded to trial. Mathis moved for a directed verdict *381 following the State’s presentation of its case-in-chief. The District Court denied Mathis’s motion and the jury convicted Mathis of the offense on May 31, 2001. On July 30, 2001, Mathis filed a notice of appeal challenging the District Court’s conclusions with regard to the constitutionality of § 61-8-314, MCA, and its denial of his motion for a directed verdict.
STANDARD OF REVIEW
¶8 Whether a statute is constitutional is a question of law. We review a district court’s application of the Constitution to determine if it is correct. State v. Stanko, 1998 MT 321, ¶ 14, 292 Mont. 192, ¶ 14, 974 P.2d 1132, ¶ 14. It is the duty of courts, if possible, to construe statutes in a manner that avoids unconstitutional interpretation. Stanko, ¶ 15. We review a district court’s decision to deny a criminal defendant’s motion for a directed verdict for an abuse of discretion. State v. Billedeaux, 2001 MT 9, ¶ 8, 304 Mont. 89, ¶ 8, 18 P.3d 990, ¶ 8.
DISCUSSION
ISSUE ONE
¶9 Does § 61-8-314, MCA, unconstitutionally delegate legislative authority to an administrative agency or private party?
¶10 Section 61-8-314, MCA, provides, in pertinent part:
(3) The speed limit in a construction zone or in a work zone must be set by the department of transportation or the local authority based on traffic conditions or the condition of the construction, repair, maintenance) or survey project.
(4) (a) If the department of transportation, the local authority, the utility company, or the private contractor determines, based on traffic conditions or the condition of the construction, repair, maintenance, or survey project, that special speed limits in work zones or construction zones are warranted, then the department, the local authority, the utility company, or the private contractor shall post signs that:
(i) conform to the department of transportation’s manual on uniform traffic control devices;
(ii) indicate the boundaries of the construction zone and the work zone; and
(iii) display the speed limit in effect within both zones.
(5) (a) A person convicted of a traffic violation in a work zone is guilty of a misdemeanor. Upon arrest and conviction, the person shall be punished by a fine of not less than double the *382 penalty provided for the violation in part 7 of this chapter.
(b) A person convicted of a traffic violation in a construction zone is guilty of a misdemeanor. Upon arrest and conviction, the person is subject to the penalty provided for the violation in part 7 of this chapter.
¶ 11 Mathis contends that the Legislature cannot delegate law-making functions, such as the establishment of speed limits, to an administrative agency or private party. Mathis admits that the Legislature can delegate ministerial functions so long as it provides clear standards and guidelines to the implementing entity. Mathis argues that § 61-8-314, MCA, fails to articulate the requisite guidelines, vesting “unbridled discretion” in the DOT. Accordingly, Mathis insists that we must strike § 61-8-314, MCA, down as an unconstitutional delegation of legislative authority.
¶12 The State argues that § 61-8-314, MCA, articulates “specific standards for the DOT or other entities performing roadwork to follow when reducing speed limits in a construction zone.” According to the State, the Legislature expressed such standards by requiring the entity to affix speed limits in accordance with the “traffic conditions or the condition of the construction, repair, maintenance, or survey project.” Therefore, the State concludes that § 61-8-314, MCA, sufficiently satisfies the requirements imposed upon the Legislature for delegating ministerial functions.
¶13 The District Court concluded that § 61-8-314, MCA, is constitutional in that it sets forth, with reasonable clarity, the limitations on the DOT’s discretion in setting speed limits in construction and work zones and does not delegate the establishment of a crime to either the DOT or private contractors.
¶14 Article III, Section 1, of the Montana Constitution provides:
Separation of powers. The power of the government of this state is divided into three distinct branches-legislative, executive, and judicial. No person or persons charged with the exercise of power properly belonging to one branch shall exercise any power properly belonging to either of the others, except as in this constitution expressly directed or permitted.
¶15 We have previously held that the authority to establish speed limits is legislative in nature. See Lee v. State (1981), 195 Mont. 1, 8, 635 P.2d 1282, 1286; Stanko, ¶ 28. The Legislature may constitutionally delegate its legislative functions to an administrative agency, but it must provide, with reasonable clarity, limitations upon the agency’s discretion and provide the agency with policy guidance. In re Petition to Transfer Territory, 2000 MT 342, ¶ 13, 303 Mont. 204, *383 ¶ 13, 15 P.3d 447, ¶ 13. In Bacus v. Lake County (1960), 138 Mont. 69, 78, 354 P.2d 1056, 1061, we stated the rule as follows:
The law-making power may not be granted to an administrative body to be exercised trader the guise of administrative discretion. Accordingly, in delegating powers to an administrative body with respect to the administration of statutes, the legislature must ordinarily prescribe a policy, standard, or rule for their guidance and must not vest them with an arbitrary and uncontrolled discretion with regard thereto, and a statute or ordinance which is deficient in this respect is invalid. In other words, in order to avoid the pure delegation of legislative power by the creation of an administrative agency, the legislature must set limits on such agency’s power and enjoin on it a certain course of procedure and rules of decision in the performance of its function; and, if the legislature fails to prescribe with reasonable clarity the limits of power delegated to an administrative agency, or if those limits are too broad, its attempt to delegate is a nullity.
On the other hand, a statute is complete and validly delegates administrative authority when nothing with respect to a determination of what is the law is left to the administrative agency, and its provisions are sufficiently clear, definite, and certain to enable the agency to know its rights and obligation.
¶16 In Duck Inn, Inc. v. Montana State Univ. (1997), 285 Mont. 519, 949 P.2d 1179, Montana State University-Northern (“Northern”) rented its facilities to private persons and organizations for parties, reunions, conventions, and receptions in order to generate supplemental revenue. The Duck Inn, a local Montana corporation, filed a complaint for declaratory judgment and application for preliminary injunction against Northern. The Duck Inn argued, in part, that the statute permitting Northern to lease its facilities to private parties unconstitutionally delegated legislative authority to an administrative agency.
¶17 The relevant portion of the statute in question provided that the regents of the Montana university system may:
rent the facilities to other public or private persons, firms, and corporations for such uses, at such times, for such periods, and at such rates as in the regents’ judgment will be consistent with the full use thereof for academic purposes and will add to the revenues available for capital costs and debt service[.]
Section 20-25-302(5), MCA (1993). Duck Inn argued that the “consistent with the full use thereof’ language vested legislative authority in the regents without specific guidelines for implementing *384 the powers.
¶18 We rejected Duck Inn’s constitutional challenge. In so doing, we concluded:
[I]t is clear that § 20-25-302, MCA (1993), is not an unconstitutional delegation of legislative authority to the board of regents. The policy underlying the statute is set forth in the statute;, that policy is to increase revenues available for the capital costs of, and debt service on, campus facilities. The implicit, but clear, rationale behind the statute is to minimize the tax support necessary to fund units of the Montana university system by leasing campus facilities. Likewise, § 20-25-302, MCA (1993), expressly constrains the leasing of such facilities by mandating that the leasing must be consistent with full use of the facilities for the academic purposes for which they were established. Here, this constraint on the board of regents is the “standard” or “guide” required ... for a proper legislative delegation of power.
The Duck Inn contends, in this regard, that the “regents’ discretion” language contained in § 20-25-302, MCA (1993), provides insufficient limits on the legislative delegation of power. It provides no legal authority for its position, however, and we conclude that the regents’ discretion is sufficiently limited by the statutory requirements that the leasing be consistent with the full use of the facilities for academic purposes and produce revenues for capital costs or debt service.
Duck Inn, Inc., 285 Mont. at 525-26, 949 P.2d at 1183.
¶19 Based on the same analysis employed in Duck Inn, Inc., we conclude that § 61-8-314, MCA, does not unconstitutionally delegate legislative authority to an administrative body or private party. Here, the implicit, but clear, rationale behind the statute is to protect drivers and workers in construction and work zones. The penalty for committing a traffic offense in a work zone, “not less than double the penalty’ for similar offenses committed outside the confines of a work zone, lends credence to the implicit policy rationale.
¶20 Contrary to Mathis’s suggestion, § 61-8-314, MCA, does not grant unfettered discretion to establish traffic regulations in construction and work zones. Rather, § 61-8-314, MCA, requires the respective entity to establish speed limits in construction and work zones “based on traffic conditions or the condition of the construction, repair, maintenance, or survey project.” Construction and work zones on Montana highways presumably encompass a diverse set of driving conditions. Because of this, establishing the speed limit for every *385 construction project would be an impractical, if not impossible, task for the Legislature. Enumerating every possible factor which might impact construction zone safety would be similarly unrealistic. Therefore, it makes sense to delegate these duties to the entities most familiar with the nuances of each project.
¶21 Mathis cites several cases in which we struck down delegating statutes as unconstitutional. Admittedly, the distinction between an unconstitutional versus a constitutional delegation appears slight in some circumstances. However, “[t]he constitutionality of a legislative enactment is prima facie presumed, and every intendment in its favor will be made unless its unconstitutionality appears beyond a reasonable doubt.” Ingraham v. Champion Intern. (1990), 243 Mont. 42, 47, 793 P.2d 769, 772. Mathis simply has not overcome his burden on appeal to establish the unconstitutionality of § 61-8-314, MCA, beyond a reasonable doubt. For the foregoing reasons, we conclude that the above caveat placed upon local entities sufficiently limits the entities’ discretion such that the prescription does not constitute an unconstitutional delegation of legislative authority. The District Court did not err in rejecting Mathis’s constitutional challenge to § 61-8-314, MCA.
¶22 As an aside, Mathis contends that, regardless of our holding with respect to an administrative agency, Ingraham prohibits legislative delegation to a private party. In Ingraham, we noted that the Legislature delegated “absolute discretion” to a private party. We observed that, if the Legislature had delegated legislative authority to an administrative agency, it would have had to prescribe standards and guides for the grant of that power. In Ingraham, however, the Legislature provided no guidance when it delegated to a private entity. While we concluded that the Legislature could not do this, we did not preclude the delegation based on the entity’s status as a private party-we did so based on the delegation of “absolute discretion.” Consequently, Ingraham simply concludes that when delegating legislative authority to a private party, the Legislature cannot ignore the limitations required of it when delegating to an administrative agency.
ISSUE TWO
¶23 Did the District Court err when it denied Mathis’s motion for a directed verdict, based on insufficiency of the evidence?
¶24 When the evidence in a criminal case is insufficient to support a guilty verdict, the court may, either on its own motion or on motion of the defendant, dismiss the action and discharge the defendant. *386 Section 46-16-403, MCA. A defendant is entitled to a directed verdict if reasonable persons could not conclude from the evidence, taken in a light most favorable to the prosecution, that guilt was proven beyond a reasonable doubt. Billedeaux, ¶ 8. Therefore, a directed verdict of acquittal is appropriate only when there is no evidence to support a guilty verdict. Billedeaux, ¶ 8.
¶25 The parties agree that the State had to prove, among other things, that the DOT and private parties complied with the provisions of § 61-8-314, MCA, to obtain a conviction for speeding in a construction zone. Mathis contends that the State failed to prove the requisite compliance beyond a reasonable doubt. First, Mathis states that a private party, not the DOT or local authority, established the relevant speed limits in violation of § 61-8-314(3), MCA. Second, Mathis notes that § 61-8-314(4), MCA, requires the posting of signs to indicate the boundaries of a construction zone. Mathis maintains that the parties failed to post signs indicating the commencement of a construction zone.
¶26 As indicated above, § 61-8-314(3), MCA, provides that “[t]he speed limit in a construction zone or in a work zone must be set by the department of transportation or the local authority based on traffic conditions or the condition of the construction, repair, maintenance, or survey project.” Mathis insists that this provision grants authority to establish speed limits exclusively to the DOT or local authority, not to a private entity as occurred here. However, § 61-8-314(4)(a), MCA, provides in relevant part:
If the department of transportation, the local authority, the utility company, or the private contractor determines, based on traffic conditions or the condition of the construction, repair, maintenance, or survey project, that special speed limits in work zones or construction zones are warranted, then the department, the local authority, the utility company, or the private contractor shall post signs ....
¶27 A statute must be read and considered in its entirety and the legislative intent may not be determined from the wording of any particular section or sentence, but only from a consideration of the whole. State ex rel. Cashmore v. Anderson (1972), 160 Mont. 175, 184, 500 P.2d 921, 926-27. Stated another way, we will read and construe a statute as a whole to give effect to a statute’s purpose and avoid an absurd result. S.L.H. v. State Compensation Mut. Ins. Fund, 2000 MT 362, ¶ 17, 303 Mont. 364, ¶ 17, 15 P.3d 948, ¶ 17.
¶28 Above, we recognized the Legislature’s implicit concern for safety embodied in § 61-8-314, MCA. To this end, the Legislature delegated the requisite authority to the most informed parties. While § 61-8- *387 314(3), MCA, contemplates the establishment of speed limits by the DOT or local authority, § 61-8-314(4), MCA, incorporates private entities’ specialized judgment. To interpret § 61-8-314, MCA, so narrowly as to limit the task solely to the DOT and local authority, would render § 61-8-314(4), MCA, meaningless and propagate an absurd result.
¶29 Further, there is substantial evidence in the record to establish that the private parties undertook the requisite action pursuant to a contract with the DOT. Shawn Hollenback, operations manager for Alpine Construction, Inc., testified that the DOT provides independent contractors with various traffic regulation plans, plans which the DOT develops, for construction and work zones. Hollenback testified that the DOT instructs the independent contractors to implement the plan which best “fits the situation.” Hollenback testified that the independent contractors selected the DOT signing plan, a plan which provides for speed limit reductions, which applied to the area in question. For the foregoing reasons, we hold that the District Court did not err when it denied Mathis’s motion for a directed verdict with regard to § 61-8-314(3), MCA.
¶30 Next, Mathis contends that the State failed to show that the DOT and/or private parties strictly complied with the requirements of § 61-8-314(4), MCA. Section 61-8-314(4), MCA, provides that if it is determined that special speed limits in construction or work zones are warranted, the determining entity must post signs that:
(i) conform to the department of transportation’s manual on uniform traffic control devices;
(ii) indicate the boundaries of the construction zone and the work zone; and
(iii) display the speed limit in effect within both zones.
¶31 At trial, Dan Bisom, supervisor of the traffic data collection section of the DOT, testified that the DOT notified ECM that they had to comply with the guidelines in the Manual on Uniform Traffic Control Devices (“MUTCD”) to insure workers’ safety. In fact, the employment contract entered into evidence as executed by DOT and ECM provides that “[a]ll traffic control must be done in accordance with the MUTCD....” Bisom testified that his maintenance department would notify him if the signs failed to comply with DOT guidelines. Bisom further testified that nobody notified him of any problems with the signs at the area in question. Additionally, Hollenback testified that the signing plan utilized in the area in question conformed to the MUTCD.
¶32 Mathis argues that the parties failed to comply with § 61-8- *388 314(4)(ii), MCA, because they did not post a sign indicating the boundaries of the construction zone. Mathis suggests that a sign stating “construction zone begins here,” or something of that nature, must be displayed to comply with § 61-8-314(4)(ii), MCA.
¶33 Mathis offers no authority in support of his position. It is important to point out that Mathis was charged with speeding in a construction zone, not speeding in a work zone. The Legislature has expressly defined the two zones differently and has provided for separate penalties for violations which occur within each zone. As for notification of the commencement of a construction zone, § 61-8-314(4)(ii), MCA, simply provides that the entity shall post signs that “indicate the boundaries of the construction zone.” Section 61-8-314(4)(ii), MCA, does not require that this indication come in the form of a “construction zone begins here” sign. The District Court acknowledged this fact upon consideration of Mathis’s motion for a directed verdict. It denied Mathis’s motion, in part, based on its conclusion that whether signing “indicates the boundaries of the construction zone” is a determination of fact, subject to the jury’s consideration.
¶34 As for what the jury had to consider on the issue, Hollenback testified about the signs erected in the construction area. Hollenback testified that a lane closure sign indicated the closing of the right lane one mile prior to the lane closure. Two thousand feet beyond that, a sign indicated a right lane closure in one-half mile. Nine hundred feet later, the parties posted a “Reduced Speed Ahead” sign. Three hundred and thirty feet beyond that, a “Fines Double in Work Zones” sign was displayed. A sixty-five mile per hour speed limit sign was posted three hundred and thirty feet beyond the “Fines Double” sign. Three hundred and thirty feet later, the parties posted an arrow board directing traffic to the appropriate lane. From there, signs incrementally reflected a reduction in speed to fifty-five, forty-five, and thirty-five. As drivers exited the construction area, they passed two additional directives, an “End of Work Zone” sign and a “Resume Speed” sign. Mathis did not call any witnesses on his behalf. Instead, Mathis challenged the State’s witnesses on cross-examination and then moved for a directed verdict at the close of the State’s case-in-chief.
¶35 Based on the foregoing, we hold that reasonable persons could conclude from the evidence, taken in a light most favorable to the prosecution, that the State proved the elements of the offense, including compliance with § 61-8-314, MCA, beyond a reasonable doubt. Accordingly, Mathis was not entitled to a directed verdict of acquittal and the District Court did not abuse its discretion when it *389 denied his motion.
¶36 Affirmed.
CHIEF JUSTICE GRAY, JUSTICES COTTER and RICE concur.