FILED

06/20/2023

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 22-0622

DA 22-0622

IN THE SUPREME COURT OF THE STATE OF MONTANA

2023 MT 120

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

NASIMI AKHMEDLI,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and For the County of Mineral, Cause No. DC-22-7
Honorable John W. Larson, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

      Shandor S. Badaruddin, Shandor S. Badaruddin, PC, Missoula, Montana

      For Appellee:

      Austin Knudsen, Montana Attorney General, Michael P. Dougherty, Assistant Attorney General, Helena, Montana

      Debra Jackson, Mineral County Attorney, Superior, Montana

Submitted on Briefs: April 26, 2023

Decided: June 20, 2023

Filed:

_____
                     Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Nasimi Akhmedli appeals from a Fourth Judicial District Court order denying his Motion to Dismiss a complaint citing him with violation of 49 C.F.R. 393.11, regulating commercial vehicle lamps and reflective devices. We address the following issue and affirm:

*Did the District Court err by denying the motion to dismiss for unlawful delegation of legislative authority?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 On March 3, 2021, Akhmedli was driving his truck and trailer loaded with other vehicles through Mineral County. When Akhmedli crossed the Haugan Scale, located on I-90, Motor Carrier Services Officer Matthew Coleman noticed that Akhmedli's load hung over his trailer by over six feet and was marked only with a red flag. Coleman cited Akhmedli with a violation of 49 C.F.R. 393.11(a)(1), incorporated by § 61-10-154, MCA, which required a red light to be affixed to such protruding loads. Akhmedli was convicted in justice court, and appealed *de novo* to the Fourth Judicial District Court, where he sought dismissal of the charge on the ground the statute violated Art. III, § 1 of the Montana Constitution, Separation of Powers. Specifically, Akhmedli argued that § 61-10-154, MCA, which authorizes the Montana Department of Transportation (MDT) to adopt rules and regulations, and § 61-9-512, MCA, which criminalizes violations of regulations adopted pursuant to § 61-10-154, MCA, constituted an unconstitutional delegation of legislative power to an administrative body. The District Court denied Akhmedli's motion, reasoning the Legislature had delegated authority to the MDT "specifically and with

2

detail," and that Akhmedli had failed to demonstrate the challenged statutes were unconstitutional beyond a reasonable doubt. Akhmedli then entered a guilty plea pursuant to a plea agreement, reserving his right to appeal the denial of his motion.

**STANDARD OF REVIEW**

¶3     "Whether a statute is constitutional is a question of law, of which this Court exercises plenary review." *Mont. Indep. Living Project v. State, DOT*, 2019 MT 298, ¶ 14, 398 Mont. 204, 454 P.3d 1216. We review a district court's "application of the Constitution to determine if it is correct." *State v. Mathis*, 2003 MT 112, ¶ 8, 315 Mont. 378, 68 P.3d 756. A statute is "presumed constitutional unless it conflicts with the Montana Constitution, in the judgement of the [C]ourt, beyond a reasonable doubt." *Mont. Indep. Living Project*, ¶ 14. Further, the "party challenging the constitutionality of the statute bears the burden of proof, and if any doubt exists, it must be resolved in favor of the statute." *Mont. Indep. Living Project*, ¶ 14.

**DISCUSSION**

¶4     *Did the District Court err by denying the motion to dismiss for unlawful delegation of legislative authority?*

¶5     Montana Code Annotated § 61-10-154(2)(a), authorizes the MDT to adopt safety standards for certain commercial vehicles. *State v. Beaver*, 2016 MT 332, ¶ 15, 386 Mont. 12, 385 P.3d 956; § 61-10-154(2)(a) ("The department of transportation shall adopt, by rule, standards for safety of operations of . . . any for hire-motor carrier or any private motor carrier."). Pursuant to this authority, MDT adopted and incorporated 49 C.F.R. 393.11, at issue in this case, which generally governs use of lamps and reflective devices on

3

commercial vehicles and, for purposes of this case, lamps and reflective devices to be used on trailers with overhang.[1]  Under § 61-9-512(2), MCA, a violation of a rule adopted pursuant to § 61-10-154, MCA, is a misdemeanor offense, and requires that an offender "shall be fined not less than $25 or more than $500 for the first offense and not less than $25 or more than $1,000 for each subsequent offense."

¶6    Akhmedli argues the Legislature's delegation of authority to MDT by §§ 61-9-512 and 61-10-154, MCA, is unconstitutional, initially broadly contending that "[n]o amount of delegation is allowed with criminal statutes," and that permissible delegation "applies exclusively to regulations and administrative proceedings in which a violation amounts to no more than a civil sanction," citing limitations upon delegation of criminal authority adopted in other states.  Alternatively, and in response to the State's argument from our precedent, Akhmedli argues that, even if delegation is permissible in a criminal context, "this Court should . . . make clear the nondelegation doctrine requires more precise legislative guidance in the criminal arena than in the civil arena."  He notes the distinctions made by the Montana and United States Constitutions between criminal and civil proceedings, such as application of the exclusionary rule and the heightened due process protection and standard of proof in criminal cases.

---

[1] Mont. Admin. R. 18.8.1502(1) adopted multiple federal regulations, of which 49 C.F.R. 393.11 comes within one section thereof: "Any commercial motor vehicle or motor carrier subject to regulation by the department under 61-10-154, MCA, shall comply with and the department adopts by reference the following portions of the Federal Motor Carrier Safety Regulations . . . . [t]he regulations adopted [include] . . . 49 C.F.R. parts 390 through 399."

¶7    This Court has considered and approved delegation in the criminal context, specifically, for traffic offenses. In *State v. Mathis*, 2003 MT 112, ¶ 1, 315 Mont. 378, 68 P.3d 756, Mathis was cited for speeding in a construction zone, and argued the "provision unlawfully delegated legislative authority to an administrative agency." The statute at issue, § 61-8-314(5)(a), MCA, provided any "person convicted of a traffic violation in a work zone is guilty of a misdemeanor." Noting we had previously held that the authority to establish speed limits was legislative in nature (citing *Lee v. State*, 195 Mont. 1, 8, 635 P.2d 1282, 1286 (1981) and *State v. Stanko*, 1998 MT 321, ¶ 28, 292 Mont. 192, 974 P.2d 1132), we again analyzed the delegation issue under the standards we had employed for civil challenges: "a statute is complete and validly delegates administrative authority when nothing with respect to a determination of what is the law is left to the administrative agency, and its provisions are sufficiently clear, definite, and certain to enable the agency to know its rights and obligation." *Mathis*, ¶ 15 (emphasis omitted); *cp. The Duck Inn v. Montana State University-Northern*, 285 Mont. 519, 525, 949 P.2d 1179, 1183 (1997) ("'the legislature must ordinarily prescribe a policy, standard, or rule for their guidance and must not vest them with an arbitrary and uncontrolled discretion with regard thereto'"). We explained:

> The law-making power may *not* be granted to an administrative body to be exercised under the guise of administrative discretion. Accordingly, in delegating powers to an administrative body with respect to the administration of statutes, the legislature must ordinarily prescribe a policy, standard, or rule for their guidance and *must not vest them with an arbitrary and uncontrolled discretion* with regard thereto, and a statute or ordinance which is deficient in this respect is invalid. In other words, in order to avoid the pure delegation of legislative power by the creation of an administrative

agency, the legislature must set limits on such agency's power and enjoin on it a certain course of procedure and rules of decision in the performance of its function; and, if the legislature *fails to prescribe with reasonable clarity the limits of power delegated to an administrative agency, or if those limits are too broad*, its attempt to delegate is a nullity.

*Mathis*, ¶ 15 (emphasis added).

¶8     In *State v. Spady*, 2015 MT 218, ¶ 9, 380 Mont. 179, 354 P.3d 590, this Court reversed the District Court's determination that §§ 44-4-1203(2)-1213(4), MCA, were unconstitutional as "an improper delegation of legislative authority to the Attorney General for failure to provide objective criteria." We held that the statutes, which were criminal in context and authorized assessment of fees related to a program for conducting alcohol breath tests, to be a proper delegation of legislative authority. The Court again instructed that "[t]he Legislature may delegate its legislative powers to an administrative body so long as it sets forth a policy, rule, or standard for guidance and does not 'vest them with an arbitrary and uncontrolled discretion.'" *Spady*, ¶ 19 (citing *In the Petition to Transfer Territory from High Sch. Dist. No. 6*, 2000 MT 342, ¶ 15, 303 Mont. 204, 15 P.3d 447). After analyzing the statute, the Court rejected Spady's argument that the provision gave "the Attorney General unfettered discretion when implementing fees." *Spady*, ¶ 20.

¶9     In assessing the propriety of the delegation, we have developed the principle utilized in *The Duck Inn*, quoted above, into "a three-part framework for analyzing whether a statute's provisions are sufficiently clear and definite," *Mont. Indep. Living Project*, ¶ 20, wherein we consider whether (1) the policy behind the statute is present; (2) the rationale behind the statute, even if implicit, is evident; and (3) the statute provides a standard or

6

guide for the proper delegation of legislative power. We applied this analysis in *Mathis*, concluding the "implicit, but clear rationale behind the statute is to protect drivers and workers in construction and work zones," and that sufficient guidance had been provided to the agency, given that construction and work zones "presumably encompass a diverse set of driving conditions," for which "establishing the speed limit for every construction project would be an impractical, if not impossible, task for the Legislature." *Mathis*, ¶¶ 19-20. Similarly, in *Spady*, we concluded the Legislature had provided ample guidelines and limiting instructions because the "Legislature limited the fees to reasonable amounts necessary to pay for the administration of the program." *Spady*, ¶ 20. Here, as argued by the State, the policy of the statute is the adoption of safety standards for a category of vehicles, primarily commercial motor carriers. The rationale of the statute, implicitly, is to ensure safety of vehicles, private and commercial, traveling on the State's highways. *See Beaver*, ¶ 16 (noting, in an enforcement context, that the subject regulations were "intended to help insure the safety of the motoring public in general, and of those engaged in commercial trucking").

¶10     The final factor in the framework is whether the statute provides standards or guides to the agency for proper delegation. Notably, here the Legislature itself established the penalties for violations, and did not provide any authority for MDT to create sanctions. *See* § 61-9-512, MCA. Then, any safety standard adopted by MDT is restricted to six types of vehicles, primarily for the commercial transport of freight, passengers, or hazardous

7

materials. *See* § 61-10-154(2)(a)-(f), MCA.[2] This identified subset of vehicles, which excludes the general motoring public, is a standard that limits and focuses the authority delegated to the agency. Further, § 61-10-154(3), MCA, provides parameters for the standards that may be adopted by MDT: "[The] [s]tandards of safety adopted under this section must substantially comply, within allowed tolerance guidelines, to the federal motor carrier safety regulations and the federal hazardous material regulations as applied to motor carriers and vehicles transporting passengers or property in commerce." Thus, MDT is required to model its safety standards after the federal commercial rules. Lastly, the Legislature addressed enforcement of the regulations in § 61-10-154(5), MCA. MDT is required to designate employees to enforce the "safety standards adopted pursuant to this section," who must "be employed in the administration of the motor carrier services functions" of the Department. Section 61-10-154(5), MCA. Section 61-10-154(5), MCA, details the duties and authority of these officers, including to "issue citations and make arrests in connection with violations of safety standards adopted under this section" and to "enforce the provisions of *Title 49 of the United States Code and regulations that have been adopted under Title 49*" (emphasis added). These provisions demonstrate that the Legislature "set limits on [MDT's] power and enjoin[ed] on it a certain course of procedure and rules of decision in the performance of its function" with "provisions [] sufficiently

_____

[2] A non-commercial vehicle included within the agency's delegated regulatory authority is a "motor vehicle that is designed or used to transport at least 16 passengers, including the driver, and that is not used to transport passengers for compensation." Section 61-10-154(2)(d), MCA.

8

clear, definite, and certain to enable the agency to know its rights and obligation." *Mathis*, ¶ 15 (emphasis omitted).

¶11 While Akhmedli's argument that delegation is not permitted for a criminal statute is incorrect, his contention that the constitutional attributes at issue in the criminal context warrant careful review of such delegation by the courts is not without merit and, may, in an appropriate case, require articulation of a standard of enhanced review. However, on the record here, we conclude, as discussed above, that the Legislature provided direction to MDT that cabined the agency's authority such that the Legislature did not delegate the lawmaking function, and therefore did not violate Art. III, § 1 of the Montana Constitution.

¶12 Affirmed.

/S/ JIM RICE

We concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ LAURIE McKINNON
/S/ DIRK M. SANDEFUR